No. 2,434.

B. C. VANDALL et al. RESPONDENTS, v. THE SOUTH SAN FRANCISCO DOCK COMPANY. APPELLANT.

CORPORATIONS. —POWERS OF.—A corporation can exercise no other powers than such as are specifically granted, or such as are necessary for carrying into effect the powers granted.

IDEM.—In determining whether a given act is within the power of a corpora-

tion it is necessary to consider, first, whether it falls within the powers expressly enumerated in the certificate; or, second, whether it is necessary to the exercise of one of the enumerated powers.

IDEM.—Where a corporation is formed " to buy, *improve*, lease, sell and otherwise dispose of real estate," etc., the term " improve" includes the performance of any act, whether on or off the land, the direct and proximate tendency of which is to benefit the property or enhance its value.

IDEM.—No infallible rule can be laid down defining accurately the point at which the benefit to be derived from a proposed work would cease to be direct and proximate, but each case must be determined on its own circumstances.

IDEM.—A corporation formed for such purposes, and owning lands in the vicinity of a railroad, may properly appropriate a portion of its funds to such railroad for the purpose of increasing the facilities and lessening the cost of transportation on the same, where the direct and proximate tendency of such increase of facilities is to enhance the value of its lands.

APPEAL from the District Court of the Twelfth District, City and County of San Francisco.

Judgment was for plaintiff, defendant moved for a new trial, which was denied; and, from the judgment and the order denying the motion for a new trial, defendant appeals.

The other facts are stated in the opinion.

*Sharp & Lloyd*, for Appellant.

The objects of the company, as declared in the articles of incorporation, are "to buy, *improve*, sell, lease and otherwise dispose of real estate," that is: to traffic in real estate in the same manner as a corporation formed to traffic in personal property, goods or chattels. Any project, therefore, that tends to increase the value of *its* real estate, is within the legitimate powers of the corporation; and the same principles which govern the powers of corporations dealing simply in personal property, would apply to this case. To improve the value of the property so as to increase its price on a sale, is a power necessary to carry into effect the powers expressly granted to the corporation, and being so, it possesses the power sought to be exercised inherently from the grant. (15 Johns. 358; 3 Comstock, 430.)

Every corporation, as such, has the capacity to take and

grant property and to contract obligations in the same manner as an individual, so far as necessary to enable it to effect the object of incorporation, unless expressly prohibited by law, or its charter, and, with this limitation, it may deal precisely as if it were an individual, to attain its legitimate objects. (1 Sandford's Chancery Rep. 280; *Spear* v. *Campbell,* 14 Wend. 20.)

*J. M. Seawell,* for Respondents.

The objects for which the defendant was incorporated are, to buy, sell and improve real estate. The transaction between the defendant and the railroad company is certainly not a purchase or sale of real estate. Neither is it an improvement of the real estate of the defendant. When we speak of real property as improved, we mean that there are erections or improvements on the land itself. When we speak of it as unimproved, we mean that there is nothing on the land; and we should equally apply the term "unimproved" to the land if there was a railroad in the neighborhood.

It is an elementary principle of law, that the charter of a corporation is to be strictly construed against the corporation. If there be any doubt as to whether a given power exists in the corporation, such doubt is resolved against the corporation. (*Charles R. Bridge* v. *Warren Bridge,* 11 Peters, 544.)

If the railroad is not authorized to be constructed by the defendant as a principal thing, it cannot be claimed as an incidental power; that is to say, if the defendant could not itself build a railroad on land not its own, as a principal business, neither can it do so under the pretence that it will incidentally promote some other corporate purpose. (*Sumner* v. *Marcy,* 3 Woodbury & Minot, 112; *Waldo* v. *Chicago etc. R. R. Co.,* 14 Wis. 580; *Coleman* v. *Eastern Counties R. R. Co.* 10 Beav. ch. R. 1; *Dodge* v. *Woolsey,* 18 How. U. S. 341–2; *Pearce* v. *Madison & Ind. R. R. Co.* 21 Id. 442.)

If the defendant can give $20,000 to this railroad, under the pretence that it is for an improvement, then the defend-

ant may engage in any business which, in the opinion of the
directors, will tend to increase the value or price of the
defendant's property.   On this theory, the defendant would
be authorized to give away its money to the owners of ad-
joining property for the purpose of settling it up—provided
in the opinion of the directors the value of defendant's
property would be increased thereby.   There is, in fact, no
useful occupation or transaction which does not tend to
increase the value of land in the neighborhood.   If this
incidental benefit to the landholder be sufficient to author-
ize the expenditure in question, there is no business what-
ever in which the defendant may not engage.   It is not nec-
essary to incorporate as a railroad or navigation company.
Under the power to buy, sell and improve land, the corpo-
ration can engage in any business, which, in the opinion of
the directors, will tend to increase the value of the land.

The further question arises, whether a corporation can
give its property away to any other person, under the pre-
tence that by means of such gift the corporation will be
incidentally benefited.   We think that the corporation has
no such power.

It has been held in a recent case in Wisconsin, which will
probably become a leading case on the subject, that a mu-
nicipal corporation cannot tax its citizens for the purpose
of donating money to a railroad company, in which the
corporation is not a stockholder.   The incidental benefit to
the public at large is not a public use or purpose sufficient
to justify the tax.   *A fortiori*, a private corporation cannot
give away its property. (*Whiting* v. *Sheboygan R. R. Co.*,
Am. Law Register for March, 1870, p. 156.)

CROCKETT, J., delivered the opinion of the Court, RHODES,
C. J., and WALLACE, J., concurring:

The defendant is a corporation organized under an
amendment made in 1864 to the general Incorporation
Act, (Stats 1863—4 p. 149), and the plaintiffs are stock-
holders of the corporation.   The action is brought to re-
strain the defendant from selling the shares of stock held

by the plaintiffs under an assessment made by the Trustees of the company. It appears from the certificate of incorporation that the corporation was formed " to buy, *improve,* lease, sell, and otherwise dispose of real estate" in and near South San Francisco; " also, to build water-front protection, slips, docks, piers, wharves, warehouses, and otherwise improve such property as may be obtained by the company." It further appears, that the company purchased and owned a tract of land at or in the vicinity of South San Francisco; and that another corporation known as the Potrero and Bay View Railroad Company had constructed, or was engaged in constructing a railroad from the city of San Francisco proper, to the vicinity of the defendant's property; and that an agreement was entered into between the defendant and the railroad company, whereby the latter bound itself, within a stipulated period, to increase the width of its road and the frequency of the trips of its cars over it, and to reduce the price of passage over it about fifty per cent., and to maintain these conditions for a period of ten years. The defendant, on its part, agreed to pay to the railroad company, as a consideration for these concessions, the sum of $20.000, and the assessments in question were levied by the Trustees on the stock of the company for the purpose of raising a fund sufficient to pay this demand. The railroad does not terminate upon or touch any portion of the property of the defendant, but it was established on the trial, and appears to have been admitted by the plaintiffs, that the increased facilities of travel over the railroad, resulting from the contract between the two companies, have already greatly enhanced the market value of the defendant's property, and are likely to increase it more largely in the future. But the plaintiffs insist that, under its act of incorporation, the defendant has no power to expend the money of the company for such a purpose, and that the assessment is, therefore, void. On the other hand, the defendant claims that the chief object of the corporation was to buy and sell real estate on speculation; and that with a view to that end it is expressly authorized to "im-

prove" its real estate so as to enhance its value, and that upon a fair and reasonable construction of the word "improve" as used in the certificate of incorporation, it must be held to include every act the direct and immediate tendency of which is materially to benefit or enhance the value of the property. The plaintiffs resist this construction, and maintain that the word "improve" can include nothing but acts performed on the land itself, such as the erection of buildings, the construction of roads across it, or other acts of a like nature performed on the land.

The only difficulty which arises in the solution of this question results from the peculiar nature of the corporation, and the very novel purposes for which it was formed. It is well settled that a railroad corporation, formed for the purpose of constructing, maintaining and operating a railway, cannot engage in the business of running a line of steamers in connection with the railway, however much such an enterprise may increase the business of the road and add to its profits (10 Bearan's R.; *McCarty* v. *Roots,* 21 How. U. S. R. 432); nor engage in the banking business, in order to raise a fund with which to construct or operate its road. (*Waldo* v. *Chicago Railroad Company,* 14 Wis. R., 580). It may be stated as a general proposition, "that a corporation has no other powers than such as are specifically granted, or such as are necessary for the purpose of carrying into effect the powers expressly granted." (Angel & Ames on Corp., Sec. 111.)

As if to preclude all doubt on this point, the second section of our general Corporation Act has, in express terms, re-enacted this provision of the common law.

It cannot be doubted, therefore, that a corporation in this State may not only exercise the powers specially enumerated in its certificate of incorporation, if they be such as are authorized by law, but, also, such other powers "as shall be necessary to the exercise of the powers so enumerated and given." It results that in determining whether a a given act is within the power of the corporation, we must consider, first, whether it falls within the powers expressly

enumerated in the certificate; or, second, whether it is necessary to the exercise of one of the enumerated powers. The powers enumerated in this certificate are to buy, *improve*, lease, sell or otherwise dispose of real estate; and to build water-front protection, slips, docks, piers, wharves, warehouses, and otherwise improve such property as may be obtained by the company.

On behalf of the plaintiffs it is insisted that the contract for additional railroad facilities, however much they may enhance the value of the property, is not within any of the enumerated powers, nor necessary to the exercise of any of them.

But in examining this question, we must necessarily consider the general purpose for which the corporation was formed; and must give such reasonable construction to the terms employed, as will tend to promote rather than to defeat or obstruct the ends for which the corporation was organized. In authorizing a corporation to be formed for the purpose of buying, selling, leasing and improving real estate, the statute conferred upon the corporators all such implied or incidental powers as shall be necessary to the exercise of those expressly granted. It is evident the corporation might purchase real estate and improve it, for the sole purpose of selling it at a higher price or leasing it at an enhanced rent. To speculate in the purchase and sale of real estate may be the sole object of such a corporation; and such appears to have been the purpose of this corporation. In furtherance of this end, and with a view to enhance its value, it is expressly authorized to "improve" the property so purchased; and the plaintiffs insist that by this term is meant only erections upon or something performed on the land itself, to ameliorate its condition; such as the erection of buildings, or fences, or necessary grading, or ditching to improve the drainage. But, in view of the evident purpose and design for which the corporation was organized, I think this is too narrow a construction of the word " improve," as used in the certificate. It may be that its ordinary meaning, as usually employed, is limited

as claimed by the plaintiffs. But it also has a larger and wider signification; and amongst other definitions, Worcester defines the word "improve" to mean, "to make good use of; to employ advantageously; to increase, augment or enhance, as to that which is evil;" while Webster defines it, "to make better; to advance in value; to use or employ to good purpose; to make productive; to turn to profitable account; to use for advantage." In view of the fact that these corporations are, or may be, formed for the sole purpose of purchasing real estate, enhancing its value and then selling it for an increased price, I think the term "improve," as here used, was employed in its more liberal sense, and includes the performance of any act, whether on or off the land, the direct and proximate tendency of which is to enhance its value in the market.

But I am not to be understood as holding that the corporation may do any act which, in some remote degree, may tend ultimately to enhance the value of the property. It could not, for example, establish a line of steamers to Japan, or an Emigration Aid Society, on the plea that an increase to the trade or population of the State would promote the general prosperity, and thereby enhance the value of the corporate property. But, as already stated, the act must be one the direct and proximate tendency of which is to benefit the property or enhance its value. If the property, for example, should be surrounded by an impenetrable morass, or rugged hills, so that it is inaccessible and valueless in its present condition, I do not doubt that the corporation might drain or bridge over the morass, or construct a road across the hills, so as to render the property accessible, and thereby enhance its value. This would justly be held to "improve" the property, without straining in the least degree, the meaning of the term, as here employed. If the opposite construction were to prevail, a work imperatively required to render the property available for the purposes for which it was acquired could not be performed. If the land was threatened with inundation, and was about to be washed away by a freshet, nothing

could be done to avert the threatened calamity; or if its value was destroyed by a contiguous nuisance, no money could be expended to abate the nuisance.

I am satisfied so narrow a construction of the powers granted to this class of corporations would, in many cases, practically defeat the purposes for which they were organized. I am aware that, in some cases, it may be difficult to define accurately the point at which the benefit to be derived from a proposed work would cease to be direct and proximate, and would become so remote as not to fall within the rule. But it is impossible to lay down an inflexible rule to govern such cases, and each case must be determined on its own circumstances. I am satisfied that this case comes fully within the rule, and that the benefit to the property of the company, resulting from the contract with the railroad company, is direct and proximate and not remote.

I may remark, in conclusion, that, whatever difficulties surround this question, result from the peculiar nature of this class of corporations, organized for the novel purpose of speculating in real estate; and, though it may be a very questionable policy, which permits corporations to be formed for such a purpose—that is a consideration to be addressed to the Legislature, and not to the Court. So long as such corporations are authorized by law, it is the duty of the Courts to give such effect to them as the statute contemplates.

I think the judgment should be reversed, and the cause remanded, with an order to the District Court to dissolve the injunction and dismiss the action.

And it is so ordered.

SPRAGUE, J., and TEMPLE, J., expressed no opinion.

Upon petition for rehearing in the nature of a prayer for a modification of the foregoing opinion, so that a new trial could be had in the Court below, CROCKETT, J., delivered the opinion of the Court: WALLACE, J., and RHODES, C. J., concurring:

The petition for a rehearing discloses no sufficient reason for modifying the opinion recently delivered in this case. It appears from the agreed statement that "the plaintiff's counsel, although not denying the general effect on the value of the defendant's property by the agreement with the railroad company in question, denied that the defendant had a right to make any such improvement unless the same was immediately upon the defendant's property in question, and insisted that any such indirect improvement, by which the price of the property might be increased, would not come within the authority conferred by the articles of incorporation upon the Trustees."

The plaintiff rested his case in the Court below solely on the proposition that the Trustees had not the power in law to bind the corporation by the contract entered into with the railroad company, but admitted on the trial, as we have seen, that the effect of the agreement was greatly to enhance the value of the property, and he now asks that a new trial be awarded to afford him an opportunity to prove that the agreement did not have that effect. Such a practice is wholly inadmissible. The plaintiff is bound by his admissions made on the trial, and should not now be allowed to controvert their truth.

Nor do I discover any reason to doubt the correctness of the conclusion which we arrived at, as to the power of the Trustees to enter into the contract with the railroad company.

Rehearing denied.