| 52 | 171 |
| 87 | 42 |
| 87 | 45 |
| 52 | 171 |
| 88 | 288 |
| 88 | 354 |
| 52 | 171 |
| c108 | 310 |
| c108 | 321 |
| 52 | 171 |
| 125 | 638 |

[No. 4858.]

## THE PEOPLE OF THE STATE OF CALIFORNIA v. GEORGE HAGAR AND CERTAIN TRACTS OF LAND.

PLAINTIFF IN ACTION TO RECOVER SWAMP LAND ASSESSMENT.—An action to recover an assessment levied for reclamation purposes in a swamp land district, organized under the Act of March 28th, 1868, may be prosecuted in the name of the people of the State.

JOINDER OF ACTIONS.—If several tracts of swamp land, of the same owner, be separately assessed under one assessment, the assessments on the several tracts may be recovered in one action.

GENERAL DENIAL IN VERIFIED ANSWER. — A general denial in a verified answer is inadmissible, and may be stricken out on motion of the plaintiff.

ESTOPPEL.—Whenever the jurisdiction of a Court not of record depends on a fact which the Court is required to ascertain and settle by its decision, such decision, if the Court has jurisdiction of the parties, is conclusive, and not subject to any collateral attack.

LAND HELD UNDER MEXICAN GRANT MAY BE INCLUDED IN SWAMP LAND DISTRICT.—Under the Act of March 28th, 1868, land held under a confirmed Mexican grant may be included and assessed in a swamp land district.

Points decided.

IMMATERIAL AVERMENT IN ANSWER.—If the petition for the formation of a swamp land district under the Act of March 28th, 1868, is signed by persons purporting to be holders of certificates of purchase, patents, or other evidences of title, representing at least one-half of the land in the proposed district, and if the petition is approved and the district organized by the Board of Supervisors, in an action to enforce an assessment, an averment in the answer that there were a large number of land-owners in the district who did not sign the petition is immaterial and may be stricken out.

IMMATERIAL ERROR.—A judgment will not be reversed for an error which did not prejudice the appellant.

CORPORATION.—Under the Act of March 5th, 1864, corporations might be formed for the purpose of purchasing and reclaiming swamp lands.

BY-LAWS FOR SWAMP LAND DISTRICT.—Under the Act of March 28th, 1868, it was not necessary that the by-laws of the district should be signed by holders of certificates of purchase or patents. It was sufficient if they were signed by holders of " other evidences of title " to the requisite amount.

CERTIFIED COPIES OF PAPERS.—A copy of the petition for the formation of a swamp land district, certified by the Clerk of the Board of Supervisors, and a copy of the by-laws, certified by the County Recorder, are admissible in evidence.

IDEM.—A copy of a letter from the Register of the State Land Office to the County Recorder, written in pursuance of sec. 46 of the Act of March 28th, 1868, and certified by the County Recorder, is admissible in evidence.

PAROL EVIDENCE TO IMPEACH CERTIFICATE.—If a copy of a public official document or record be certified by the proper custodian of it to be correct, it is not competent to show, by parol, that the certificate is false.

ASSESSMENT IN SWAMP LAND DISTRICT.—In a collateral proceeding, it is not competent to prove that the Commissioners of Assessment erred in judgment in determining the degree of benefit which the several parcels of land would receive from the reclamation. In the absence of fraud, the decision of the Commissioners is conclusive in a collateral action.

JUDICIAL NOTICE.—Under sec. 1875 of the Code of Civil Procedure, the Court will take judicial notice of " public and private official acts " of the Legislature.

JOINT VIEWING BY COMMISSIONERS OF ASSESSMENT.—Under the Act of March 28th, 1868, it is not necessary that the Commissioners of Assessment should jointly go in person upon each and every acre in the district; and it will be sufficient if the Commissioners jointly make such an examination of the land as will enable them to form an intelligent judgment as to the benefits which will accrue to each and every acre.

FINDING OF FACT.—If the Court does not, in terms, find the ultimate fact in issue, but finds probative facts from which there can be but one conclusion as to the ultimate fact, the finding will be sufficient.

ASSESSMENT PAYABLE IN GOLD COIN.—It is not error to make an assessment in a swamp land district payable in gold coin.

INTEREST ON DELINQUENT SWAMP LAND ASSESSMENT.—Under the Act of March 28th, 1868, a delinquent swamp land assessment does not bear interest.

FINDING OF FACTS.—If the Court does not find in words the ultimate fact, but finds facts from which the ultimate fact must follow, the finding is sufficient.

ASSESSMENT ON SWAMP LAND—GOLD COIN.—An assessment on swamp land, for the purpose of reclaiming the same, under the Act of 1868, may be en-

forced by a lien on the land, and may be made payable in gold coin of the United States.

INTEREST ON SWAMP LAND ASSESSMENT.—In enforcing the lien of an assessment on swamp land, for reclaiming the same, under the Act of 1868, the Court cannot award interest on the delinquent assessment.

APPEAL from the District Court, Tenth Judicial District, County of Colusa.

Action to collect an assessment levied on several tracts of land in Swamp Land District One Hundred and Eight, by having the same declared a lien on the land, and by a sale of the land therefor. The different parcels of land, which were separately assessed, were made defendants along with defendant Hagar. They were described by township, range, and section, or subdivision of a section, according to the official surveys of the United States. The assessments amounted to nine thousand nine hundred and ninety dollars and eleven cents. The defendants demurred to the complaint, but the Court overruled the demurrer.

The complaint averred that the Sacramento Valley Reclamation Company, a corporation formed under the laws of this State, and Louis A. Garnett, A. H. Rose, and Charles F. Reed, on the 17th day of August, 1870, presented to the Board of Supervisors of Yolo County a petition setting forth that they desired to reclaim a certain body of swamp and overflowed land, described in the petition by township, range, and section, and subdivision of section, and that, for that purpose, they desired to form a district to include the same ; that the number of acres in the district was seventy-four thousand and eighty-five and eighty-seven hundredths, of which the petitioners were the holders of certificates of purchase, patents, and other evidences of title to forty-two thousand two hundred and seventy-nine and eighty-seven hundredths acres, being more than one-half of all the land in the district ; that the lands were in Yolo and Colusa Counties, and forty thousand eight hundred and thirty-five and thirty-five hundredths acres were in Yolo County, and thirty-three thousand two hundred and eighty and fifty-two hundredths acres were in Colusa County ; and also setting forth the whole quantity of land sold in the proposed district, the number

of acres in each tract sold, with the names of the owners thereof, as far as known, and that the land was susceptible of one mode of reclamation, and praying for an order of publication and day to be fixed for the hearing of said petition, and that the district be formed; that the Board ordered the petition to be filed, and four weeks' notice to be published of its hearing; that the petition and order were published; that on the 19th of September, 1870, the petition was heard by the Board of Supervisors, who found that the statements therein contained were correct, and that no land was improperly included in or excluded from the district, and on the 28th of September an order was made approving of the petition; that a certified copy of the petition, with the proceedings thereon, was then forwarded to the Clerk of the Board of Supervisors of Colusa County, and that the petition, with the order fixing the day of hearing and for publication, the affidavit of publication, and the order approving the petition, were recorded by the Recorder of Yolo County, in a book kept for that purpose, and a certified copy thereof was forwarded to the Register of the State Land Office; that the Register of the State Land Office named the district Number One Hundred and Eight; that on the 28th of September, 1870, the petitioners, by an instrument in writing, signed by the holders of certificates of purchase and patents, representing more than one-half of the land sought to be reclaimed or benefited, established by-laws and appointed three of their number, to wit, A. H. Rose, Louis A. Garnett, and Charles F. Reed, to act as a Board of Trustees, and said instrument was recorded by the Recorder of Yolo County in the same book with the petition; that the Board of Trustees organized, employed engineers, etc., and reported the plans of the work, etc., to the Boards of Supervisors of the two counties, and also estimates of costs and expenses, which were estimated at one hundred and forty thousand dollars, and said reports were filed in the offices of the respective Boards; that the Boards of Supervisors of said counties appointed William Minis, John M. Kelly, and W. F. Goad Commissioners, who qualified, and then jointly viewed and assessed on each and every acre a tax proportionate to the whole expense and to the benefits which would result from the

work, and that the tax was one dollar and ninety-five and fifteen one-hundredths cents on each acre. The foregoing are the material averments of the complaint, so far as the present case is concerned.

Sec. 446 of the Code of Civil Procedure requires that when the State, or any officer of the State in his official capacity, is plaintiff, that the answer must be verified. Separate answers were filed by Hagar and the land, and the answers were verified. The plaintiff moved to strike out portions of the answers, and the Court granted the motion.

On the trial, the plaintiff offered in evidence a copy of the petition, certified by the Clerk of the Board of Supervisors of Yolo County. The defendant objected, but the Court overruled the objection.

The Court also admitted in evidence a copy of the by-laws of the district, certified by the Recorder of the county where they had been recorded. The Register of the State Land Office addressed the following letter to the County Recorder of Yolo County:

"STATE OF CALIFORNIA,
State Land Office,
SACRAMENTO, October 4th, 1870.

" E. Bynum Esq., County Recorder—DEAR SIR: I have received a copy of the petition for the formation of a Swamp Land District in Yolo County, signed by A. H. Rese, L. A. Garnett, and others. In accordance with law, I notify you of the number of said district assigned by this office, which is No. one hundred and eight (108). Respectfully,

" J. W. BOST, Register,
" Per E. TWITCHELL, Deputy."

A certified copy of this letter was received in evidence, against the objection of defendant.

The Act of 1872, (Statutes 1871–2, p. 696) referred to in the opinion, provides that warrants drawn by the Trustees of District No. 108, and which are not paid for want of funds, shall bear interest at the rate of ten per cent. per annum, and that all delinquent assessments shall bear interest at the same rate.

The other act (Statutes 1871–2, p. 776) provides that all swamp and overflowed land in the district shall be liable for all assessments levied thereon.

In finding on the question of jointly viewing and assessing, the Court, instead of finding the ultimate fact, found the day that the Commissioners went on to the land, the point where they entered it, what part of it they passed over, what part they saw, and how long they were on the land. The Court enforced the assessments as liens on the separate parcels of land on which they were assessed, and directed the same to be sold. The defendants appealed from the judgment, and from an order denying a new trial.

The certificate of incorporation of the Sacramento Valley Reclamation Company stated that the corporation was formed for the "purchase of swamp and overflowed lands, and adjacent high lands, * * * the construction of dykes, levees, canals, reservoirs, and other works necessary for the reclamation of the said swamp and overflowed lands, and for the collection and distribution of water for the purpose of irrigation; the subdivision of said lands, when reclaimed, into suitable farming tracts, and the sale thereof."

It was filed in the office of the Secretary of State August 1st, 1869, and dated and acknowledged August 2nd, 1869. The defendant appealed from the judgment, and from an order denying a new trial.

The other facts are stated in the opinion.

*Geo. Cadwalader* and *W. C. Belcher,* for the Appellants.

The demurrer should have been sustained for an improper union of several causes of action. (*Dyer* v. *Barstow,* 50 Cal. 652.)

The denials in the answer should not have been stricken out. (*Tynan* v. *Walker,* 35 Cal. 634.) An estoppel is waived where the facts constituting the estoppel are laid open by averment. (*Mcgerle* v. *Ashe,* 33 Cal. 84; *Phila. Wil. Co.* v. *Howard,* 13 How. 518.)

There was no finding of fact that the Commissioners jointly

viewed and assessed the land. (*People* v. *Coghill*, 47 Cal. 361; *Fratt* v. *Toomis*, 48 Cal. 35.)

The Sacramento Valley Reclamation Company did not have a corporate existence. The act under which it is pretended that it incorporated reads as follows:

" Corporations for manufacturing, mining, mechanical, mercantile, wharfing and docking, or chemical purposes, or for the purpose of engaging in any other species of trade, business, or commerce, foreign and domestic, may be formed according to the provisions of this act; such corporations and the members thereof being subject to all the conditions and liabilities herein imposed, and to none others." (Act of 1864, sec. 1 ; *Head* v. *Providence Ins. Co.* 2 Cranch, 127.) The law did not authorize corporations to buy and sell real estate.

The order of the Board of Supervisors approving of the petition may be attacked collaterally. (*Starbuck* v. *Murray*, 5 Wend. 156; *People* v. *Hurlburt*, 46 N. Y. 113; *People* v. *Knowles*, 47 N. Y. 415; Code of Civil Procedure, secs. 456, 1906, 1916, 1978, 1962, sub. 6 and 1963 ; *Smith* v. *Rice*, 11 Mass. 507.)

*W. F. Goad*, also for the Appellants.

*A. L. Hart, S. W. Sanderson,* and *William Blanding*, for the Respondent.

As to the alleged misjoinder in joining, as defendants, the several tracts assessed to Hagar, it is submitted that the complaint describes separately each tract as assessed, and states the amount of assessment on each, and avers that all such tracts belong to him, and prays judgment against each tract separately for the amount of its assessment, and an order of sale of each therefor. The uniform practice in tax suits has been to include in one suit several tracts of land where they are assessed to the same owner. Instances of this may be seen in the following cases: *People* v. *Morse*, 43 Cal. 534; *People* v. *Culverwell*, 44 Cal. 620.

Defendant's denial that the lands were on 17th August, 1870, (the date of the presentation of the petition) or were at any

time since, swamp or overflowed, was properly stricken out, because it was averred in the petition and was found by the Board of Supervisors to be correct in their order approving the petition. This was a judicial determination of the question, and conclusive. (*Waugh* v. *Chauncy*, 13 Cal. 11 ; 5 N. Y. 434; Ibid. 497 ; 29 N. Y. 106; 19 Wend. 55.)

The rule that the jurisdiction of inferior Courts is open to inquiry, is subject to the following important qualification:

If the inferior Court has passed upon the jurisdictional facts and found them sufficient, the parties and their privies are estopped in collateral actions to litigate them again. (Bigelow on Estoppel, 142, *et seq.*, and cases there cited.)

It is a settled principle of law that when a discretion has been conferred by statute its exercise cannot be reviewed and is not subject to any appellate tribunal. (*Matter of Beale Street*, 39 Cal. 495; *Porter* v. *Haight*, 45 Cal. 631; *In Matter of Extension of Church Street*, 49 Barb. 456 ; *In Matter of Commissioners of Central Park*, 51 Barb. 277 ; *People* v. *Commissioners of Jefferson County*, 56 Barb. 136; *People* v. *Collins*, 19 Wend. 56.)

Assessors having jurisdiction of the subject-matter for the purpose of making an assessment of property for taxation, act judicially in making such assessment, and their determination is conclusive in all cases when collaterally in question, and can only be reviewed in direct proceedings. (*Barkhyte* v. *Shephard*, 35 N. Y. 238; *Bank of Commonwealth* v. *The Mayor*, 43 N. Y. 184.)

The manner of viewing and what they should view was a matter of discretion and judgment, as much as that of benefit and quantum of benefit. The thirty-third section of the Act of 1868 prescribes no rule except that the viewing shall be joint ; all the rest is left to their discretion. In such cases the authorities are explicit that the Court will not review its exercise. For instance : As to the area of land to be assessed for benefits. (*In the Matter of Church Street Extension*, 49 Barb. 455.)

As to valuation of land for assessment. (*People* v. *Collins*, 19 Wend. 56 ; *In the Matter of Commissioners of Central Park*, 51 Barb. 277–303 ; *Piper's Appeal*, 32 Cal. 530 ; *W. P. R. R. Co.* v. *Reed*, 35 Cal. 621.)

As to benefits and quantum of benefits. (*Le Roy* v. *Mayor of New York*, 20 Johns. 429.)

The State, when plaintiff, need not verify its complaint. The defendant always must—both by sec. 446 Code Civil Procedure, (the answer was filed after the Code took effect) and by sec. 42 of Revenue Act of May 17th, 1861.

Portions of the answers were properly stricken out for the following reasons:

The Board of Supervisors had necessarily adjudicated all the matters denied, and their determination was final, and could not be attacked collaterally.

It is a settled principle of law that when a discretion has been conferred by statute its exercise cannot be reviewed and is not subject to any appellate tribunal. (*Matter of Beale Street*, 39 Cal. 495; *Porter* v. *Haight*, 45 Cal. 631; *In Matter of Extension of Church Street*, 49 Barb. 456; *In Matter of Commissioners of Central Park*, 51 Barb. 277; *People* v. *Commissioners of Jefferson County*, 56 Barb. 136; *People* v. *Collins*, 19 Wend. 56.)

Assessors having jurisdiction of the subject-matter for the purpose of making an assessment of property for taxation, act judicially in making such assessment, and their determination is conclusive in all cases when collaterally in question, and can only be reviewed in direct proceedings. (*Barkhyle* v. *Shephard*, 35 N. Y. 238; *Bank of Commonwealth* v. *The Mayor*, 43 N. Y. 184.)

An assessment was made to owners *unknown*. Held, to amount to an official certificate that the owner was *unknown*, and that such certificate was conclusive of the fact and could not be collaterally called in question in an action brought on the assessment. (*Chambers* v. *Satterlee*, 40 Cal. 518.)

The viewing of the Commissioners was joint, and they formed a judgment. Was their viewing sufficient? Whether it was sufficient was a question for the Commissioners themselves to decide.

The manner of viewing and what they should view was a matter of discretion and judgment, as much as that of benefit and quantum of benefit. The thirty-third section of the Act of 1868

prescribes no rule except that the viewing shall be joint; all the rest is left to their discretion. In such cases the authorities are explicit that the Court will not review its exercise. For instance: As to the area of land to be assessed for benefits. (*In the Matter of Church Street Extension*, 49 Barb. 455.)

As to valuation of land for assessment. (*People* v. *Collins*, 19 Wend. 56; *In the Matter of Commissioners of Central Park*, 51 Barb. 277–303; *Piper's Appeal*, 32 Cal. 530; *W. P. R. R. Co.* v. *Reed*, 35 Cal. 621.)

As to benefits and quantum of benefits. (*Le Roy* v. *Mayor of New York*, 20 Johns. 429.)

*S. W. Sanderson*, also for the Respondent.

"The jurisdiction sufficient to sustain a record is jurisdiction over the *cause*, over the *parties*, and over the *thing*, when a specific thing is the subject of the action." (Code Civil Procedure, sec. 1917.)

All other facts, even if they be in any sense jurisdictional, are also issuable, in the sense that they relate to the merits, and the judgment upon them is conclusive in a collateral action; of which facts the holding of certificates of purchase by petitioners, the character of the land, etc., are examples. (Bigelow on Estoppel, 142, and cases cited; Freeman on Judgments, sec. 524, *et sequens*, and cases cited.)

The Court did not err in striking out the denial in relation to the corporate existence of the "Sacramento Valley Reclamation Company." The petition did not aver the *de jure* existence of the corporation, but only its *de facto* existence; and upon the trial, the proof was confined to the question of the existence, *de facto*, of the corporation. (*Heaston* v. *The Cincinnati &c. R. Co.* 16 Ind. 278.)

A similar denial was stricken out in the case referred to, and on appeal it was held to have been rightly done. (See first paragraph, on page 278.)

Under the law of this State the existence, *de jure*, of a corporation cannot be inquired after at all, at the instance of a private person, and a denial of such existence is idle. (Civil

Code, sec. 358; *Dannebroge &c. Co.* v. *Allment*, 26 Cal. 286; *Rondell* v. *Fay*, 32 Cal. 354; *S. & L. G. R. Co.* v. *S. & C. R. R. Co.* 45 Cal. 680; *State* v. *Carr*, 5 N. H. 367; *Pres. &c.* v. *Thompson*, 20 Ill. 200; *Hamilton* v. *Carthage*, 24 Ill. 22; *Kayser* v. *Bremen*, 16 Mo. 88; *St. Louis* v. *Shields*, 62 Mo. 251.)

So, in this respect, a corporation stands upon the same level as a natural person, and is no more required to aver its capacity to sue than is a natural person. If the defendant intends to question its capacity, he can do so only by special plea. The general issue will not be sufficient. In the language of the cases "the name argues a corporation." (*Norris* v. *Stapps*, Hobart, 370 (211*a*); *U. S. Bank* v. *Haskins*, 1 Johns. Cas. 132; *Wilson & Co.* v. *Sprague &c. Co.* 55 Ga. 672; *The Bennington Iron Co.* v. *Rutherford*, 3 Har. (N. J.) 158; S. C. Ibid. 105.)

By the Court, CROCKETT, J.:

The demurrer to the complaint was properly overruled. The action was rightly brought in the name of the people. The swamp land district was organized under the Act of March 28th, 1868, (Statutes 1867–68, p. 507) and sec. 35 of the act provides that if an assessment be delinquent, "the District Attorney shall proceed at once against all delinquents in the same manner as is provided by law for the collection of State and county taxes." The method provided by law for the collection of delinquent taxes on real estate is an action in the name of the people against the delinquents and all owners and claimants, known and unknown, and against the real estate. The action was therefore properly brought in the name of the people. Nor was there a misjoinder of causes of action. Though several tracts of the same owner were separately assessed, there was but one assessment, and the cause of action is the failure to pay it. The assessment is a unit, constituting but one transaction, and is strictly analogous to a levy of State and county taxes upon different parcels of land of the same owner; and it has never been doubted, so far as we are aware, that under our revenue system a tax assessed at the same time upon several

parcels of land of the same owner may be enforced in the same
action. This has been the uniform practice, and it would lead
to a great and useless multiplicity of actions if it were other-
wise. The same rule is applicable to assessments of this char-
acter. In *Dyer* v. *Barstow*, 50 Cal. 652, the action was for
the collection of several separate street assessments, made at dif-
ferent times, under distinct contracts, and constituting several
distinct transactions. We held that there were several separate
causes of action which could not be united. But there is no
analogy between that case and this.

In the case at bar, the answers were verified as required by
sec. 446 of the Code of Civil Procedure; and at the trial, on
motion of the plaintiff, the Court struck out several portions of
the answers, including a general denial of the averments of the
complaint. This ruling is relied upon as error. It needs no
argument to show thàt a general denial in a verified answer is
inadmissible, and it was properly stricken out. Nor did the
Court err in striking out those portions of the answer which
denied that the lands were swamp and overflowed, and that the
petitioners held certificates of purchase, etc., and that the lands
of the defendants would be benefited by the reclamation. These
matters were necessarily passed upon by the Board of Supervisors
in considering the petition for the formation of the district. All
the parties in interest were brought before that tribunal by a
proper notice. They had their day in Court, and are concluded
by the judgment. In order to give the Board of Supervisors
jurisdiction of the proceeding, it was necessary that a petition
be filed stating the facts required by the statute, and that due
notice be given to the parties in interest. It then became the
duty of the Board to consider the petition, and to determine
whether the facts therein stated were true, and if they found
them to be so, it was their duty to approve the petition and to
establish the district. In performing this duty, the Board nec-
essarily passed upon the truth of the averments contained in
the petition, and upon the facts essential to its jurisdiction. The
petition in this case being sufficient, and due notice having been
given, and the Board having decided the averments of the peti-
tion to be correct, its judgment is conclusive—1st. That the

lands in question were swamp and overflowed; 2nd. That the petitioners held certificates of purchase and other evidences of title, as averred in the petition; 3rd. That the lands would be benefited by the reclamation. These were jurisdictional facts which the Board necessarily determined in approving the petition, and its action is not open to attack in a collateral action. " Whenever the jurisdiction of a Court not of record depends on a fact which the Court is required to ascertain and settle by its decision, such decision, if the Court has jurisdiction of the parties, is conclusive, and not subject to any collateral attack." (Freeman on Judgments, sec. 523 ; Bigelow on Estoppel, p. 142.)

Nor did the Court err in striking out the averment that there were a number of land-owners within the district who did not sign the petition. This allegation tendered an immaterial issue. The statute required the petition to be signed by holders of certificates of purchase, patents, and other evidences of title, representing at least one-half of the land in the proposed district. This petition purported to be so signed, and the Board of Supervisors decided the averments of the petition in this respect to be true. The decision of the Board on this point is conclusive, in a collateral action, and it is wholly immaterial whether there were other land-owners within the district who did not sign the petition. The averment that the defendant, Hagar, held his lands under a title derived from the Mexican Government was properly stricken out. (*Hagar* v. *Supervisors of Yolo*, 47 Cal. 222.)

If the Court erred in striking out that portion of the answer which denied the corporate existence of the Sacramento Valley Reclamation Company, it was an error which did not prejudice the defendants. The plaintiff was afterwards permitted to put in evidence the certificate of incorporation, which was the best and only admissible evidence of the act of incorporation. If the judgment was reversed, and a new trial ordered on the ground that the Court erred in striking out this portion of the answer, the only result would be that, on another trial, the plaintiff would again put in evidence the certificate of incorporation, which would conclusively establish the due incorporation of the

company.   A new trial on this point would not benefit the defendants, and therefore ought not to be granted. (Code of Civil Procedure, sec. 475; *Robinson* v. *W. P. R. R. Co.* 48 Cal. 424.)

It is strenuously insisted, however, that under the laws of this State a corporation could not be formed for the purposes for which this corporation was created. But this point is answered by the case of *Vandall* v. *S. S. F. Dock Co.* 40 Cal. 83, in which we recognized the validity of such corporations. If, however, it were an open question, we are of the opinion that, under the broad language of the Act of March 5th, 1864, under which this company was incorporated, corporations might be formed for the purposes specified in its certificate of incorporation.

There was no error in striking out that portion of the answer which denied the adoption of by-laws and the appointment of trustees by the holders of certificates of purchase and patents for the requisite amount of land.   Sec. 32 requires the trustees to be appointed by the petitioners, and " by the votes or signatures of the holders of certificates of purchase or patents representing at least one-half of the land sought to be reclaimed "; and that the by-laws " shall be signed by the holders of certificates of purchase or patents representing at least one-half of the land so to be reclaimed or benefited." The adoption of the by-laws and the appointment of the trustees could be established only by the production of the written instrument, as was done in this case. The instrument was signed by all the original petitioners, whom, as we have already seen, the Board of Supervisors, in approving the petition, must necessarily have decided to be holders of certificates of purchase, patents, or other evidences of title, representing at least one-half the land in the proposed district.   But it is said that none but the holders of certificates of purchase and patents were qualified to act in the adoption of by-laws and the appointment of trustees, and that the action of the Supervisors did not establish that the petitioners held these particular muniments of title, but only that they were the holders of these or "*other* evidence of title." It is to be observed, however, that the petition need be signed only by holders of certificates of purchase, patents, *or other evidences of title*, representing at least one-half of the land sought to be reclaimed;

and sec. 32 provides that the *petitioners* shall establish by-laws
and appoint three of their own number to act as trustees.  The
petition would be sufficient to authorize the creation of the dis-
trict, even though none of the petitioners held certificates of
purchase or patents, provided they held " other evidences of
title " for the requisite amount of land.    In such a case, if the
statute be literally construed, though the district was legally
established, there would be no by-laws or trustees, for the rea-
son that none of the petitioners held certificates of purchase or
patents, and they would therefore be incompetent to ordain by-
laws and appoint trustees.    In this respect there appears to be
an irreconcilable conflict between these provisions.    It was com-
petent for the Supervisors to create the district on the petition
of persons who held no certificates of purchase or patents, but
only "other evidence of title."    To carry out the purposes of the
statute, it was necessary that there should be by-laws and a
Board of Trustees ; but in the case supposed, if the statute be
literally construed, there would be no by-laws or Trustees, be-
cause none of the petitioners held certificates of purchase or
patents.    In construing statutes containing repugnant clauses,
it is the duty of the Court to examine the whole statute, and to
give effect to such of the repugnant provisions as best comport
with the end to be accomplished, and will render the statute
effective rather than nugatory.    In such cases, the maxim,
" *Ut res magis valeat quam pereat,*" applies.    Acting on this
rule, we reject the provision requiring the by-laws to be or-
dained and the Trustees to be appointed by such of the petition-
ers as held certificates of purchase or patents as repugnant to
other portions of the statute.    The adoption of by-laws and the
appointment of Trustees were valid, even though the petitioners
who performed the act were not holders of certificates of pur-
chase or patents.    The action of the Supervisors in creating the
district being conclusive evidence that the petitioners held either
these or other evidences of title to the requisite amount, it re-
sults that so much of the complaint as averred that the by-laws
were ordained and the Trustees appointed by such of the peti-
tioners as held certificates of purchase or patents was surplus-
age, and tendered an immaterial issue.    There was, therefore,

no error in striking out so much of the answer as denied this averment. Nor was it error to strike out that part of the answer which averred that so much of the land within the district as was included in the Jimeno grant was not "at any time surveyed or subdivided into sections and subdivisions of sections, or segregated as swamp and overflowed land, by or under the authority of the United States, or the State of California, or of this defendant, or of any of his grantors." If it be assumed that the survey and subdivision of the land, or its segregation as swamp land, by or under the authority of the United States or of this State, was a condition precedent, without the performance of which it could not be included within a swamp land district, then the prior survey or segregation became jurisdictional facts which were necessarily passed upon by the Supervisors in creating the district.

There was no error in admitting in evidence the certified copy of the petition, without further proof of the execution of the original. It was a public writing—a record of the Board of Supervisors, within the purview of sec. 1888 of the Code of Civil Procedure, and within the meaning of sec. 1904 of the same Code. That the petition was not defective in substance was decided in *Hagar* v. *The Board of Supervisors*, 47 Cal. 222. Nor did the Court err in admitting in evidence the certified copy of the by-laws and the appointment of trustees. Sec. 32 of the statute required this instrument to be recorded in the office of the County Recorder; and if it is to be deemed a private and not a public writing, a certified copy was admissible in evidence, under secs. 1919 and 1855 (subdivision 4) of the Code of Civil Procedure. The objection made to the plans and specifications is, that it was not shown that the Trustees who adopted and reported them were legally appointed; but this point has already been disposed of.

The letter from the Register of the State Land Office to the County Recorder of Yolo County was an official act, in the performance of a public duty enjoined by sec. 46 of the Act of March 28th, 1868, and the original was properly in the custody of the County Recorder. A certified copy of it, from the County Recorder, was admissible in evidence under subdivision 6 of sec.

1918 of the Code of Civil Procedure. The objection to the order of the Board of Supervisors, appointing Commissioners of Assessment, was properly overruled. The Board had jurisdiction to make the order, which was in proper form, and the evidence was relevant and material.

The evidence offered by the defendant for the alleged purpose of showing that the original petition (of which the plaintiff had put in evidence a certified copy) had been altered in a material part, without authority of law, after it was filed, and consequently that the certified copy put in evidence by the plaintiff was not a true copy of the original, was properly excluded. The Clerk, who is the proper custodian of the original petition, certifies that the copy put in evidence by the plaintiff is a true copy of the original; and the offer of the defendant was to show by parol that the certificate of the Clerk was false. He did not offer to produce the original, or a copy of it certified by its proper custodian, the Clerk, so that by comparing the two copies the discrepancy between them might be shown. On the contrary, he offered only a certified copy of a copy from the office of the County Recorder, supplemented by some parol evidence which, it was claimed, tended to prove that the original had been altered by one of the attorneys after it was filed. Waiving the question whether it was competent in this way to impeach the truth of the Clerk's certificate, we think it sufficiently appears on the face of the offer that the original had not in fact been altered, but only that the sheets composing the schedule annexed to the petition had in some way become disarranged in the order in which they were originally fastened together, and that the alleged alteration consisted in taking the sheets apart, re-arranging them in their proper order, and again fastening them together as they were when the petition was filed. We think the evidence was properly excluded.

In respect to the offer of the defendants to prove that the lands were not in fact swamp and overflowed, nothing more need be said, as that point has already been sufficiently discussed in a previous part of this opinion.

The offer to prove by the witness Purkett that the several parcels of land within the district were of different values, and

would be benefited in different degrees, and consequently that
the Commissioners had committed an error in the assessment,
was properly excluded. The statute confides to the Commis-
sioners the duty of ascertaining the benefits to each parcel of
the land severally. They must exercise their judgment and dis-
cretion, and in the absence of fraud, their action in this respect
cannot be attacked and shown to be erroneous in a collateral
proceeding.

It was unnecessary for the plaintiff to put in evidence the
Acts of the Legislature of March 29th and March 30th, 1872,.
(Statutes 1871–2, pp. 696, 776) inasmuch as the Court would
take judicial notice of them under sec. 1875 of the Code of
Civil Procedure, which requires the Courts to take judicial
notice of "public and *private* official acts of the Legislative,.
Executive, and Judicial departments of this State and of the
United States." No possible injury could have resulted to the
defendants from allowing the plaintiff to put in evidence stat-
utes of which the Courts were bound to take judicial notice.

It is contended by the defendants that the evidence fails to
show and the Court did not find that the Commissioners jointly
viewed and assessed the land as required by sec. 33 of the stat-
ute. That section provides that the Commissioners "shall
jointly view and assess upon each and every acre to be reclaimed
or benefited thereby a tax," etc. If this means that the Com-
missioners shall jointly view each and every acre, by going in
person and together upon each and every acre in the whole
tract, it is clear that in this view there was no joint viewing of
the land in this case. But we would not be justified in giving
to the statute a construction so unreasonable. This district con-
tains more than 74,000 acres, and without an accurate survey,.
dividing the whole into tracts of one acre each, it would be
wholly impracticable for the Commissioners to perform their
duty in this method. The statute must receive a reasonable
construction; and all that it requires is that the Commissioners
must jointly make such an examination of the land as will ena-
ble them to form an intelligent judgment as to the benefits which
will accrue to each and every acre from the proposed reclama-
tion. We cannot say that the evidence fails to show that such

an examination was made in this case.  In the performance of
such a duty, involving the exercise of judgment and discretion,
if the Commissioners, as it appears they did, went together upon
the land, traversed it in different directions, and from different
points of observation obtained a view of the whole tract, we are
not prepared to say, as a matter of law, that this was not such
a joint viewing as the statute requires.

In respect to the finding, the Court, it is true, does not in so
many words find that there was a joint viewing and assessment
of the land.  But facts are found from which that conclusion is
inevitable; and in *Coveny* v. *Hale*, 49 Cal. 552, we held this to
be sufficient.  The Court below, in denying the motion for a
new trial, interpreted this finding by saying, " in the case at
bar if it is found that the Commissioners did jointly view and
assess the land," and though the practice of making a finding
in this method is not to be commended, we think no benefit
would result from sending the case back with an instruction to
make the finding more specific.  There was no error in declar-
ing the assessment a lien on the land, and making it payable in
gold coin.

We think, however, the Court erred in awarding interest on
the delinquent assessments, and that the judgment must be
modified by striking out the interest.

It is therefore ordered that the judgment and decree of the
District Court be and the same is hereby modified by striking
therefrom the items allowed as interest, and in other respects
the judgment and order are affirmed, with costs to the appellant.

Remittitur forthwith.

Mr. Justice RHODES did not express an opinion.