## RECLAMATION DISTRICT No. 108 *v.* HAGAR.

*(Circuit Court, D. California.* November 8, 1880.)

1. ASSESSMENT—DUE PROCESS OF LAW.—Whenever, by the laws of a state, or by state authority, a tax, assessment, servitude, or other burden is imposed upon property for public uses, whether it be for the whole state or of some more limited portion of the community, and those laws provide for a mode of confirming or contesting the charge thus imposed in the ordinary courts of justice, with such notice to the person, or such proceeding in regard to the property, as is appropriate to the nature of the case, the judgment in such proceeding cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections.

    *Davidson* v. *New Orleans,* 96 U. S. 97, 105.

2. SAME—SWAMP LANDS—STATUTE OF CALIFORNIA.—A statute of California, relating to the reclamation of swamp lands, provided that commissioners should "jointly view and assess, upon each and every acre to be reclaimed or benefited thereby, a tax proportionate to the whole expense, and to the benefit which would result from such works." *Held,* that this provision certainly seemed to require an apportionment of assessments according to benefits.

3. SAME—SAME—SAME—CONSTRUCTION.—*Held, further,* that the question was one of constitutional law, arising wholly under the state constitution, and therefore concluded by the decisions of the supreme court of the state.

4. SAME — SAME — SAME — CONTRACT. — *Held, further*, that the statute authorizing the assessment in question did not violate the obligation of any contract between the United States and California, or the United States and her patentees or grantees, or between the state of California and purchasers from her, or grantees of the United States, or any contract found in the charter of the plaintiff.

5. SAME—SAME—SAME—SAME—GOLD COIN.—*Held, further*, that the authorizing the assessments to be collected in gold coin did not impair the obligation of any contract.

*Lane Co.* v *Oregon*, 7 Wall. 73.

6. SAME—SAME—SAME—"INCIDENTAL EXPENSES."—*Held, further*, that attorney and counsel fees, in prosecuting suits for the recovery of such assessments, are "incidental expenses," within the meaning of the statute, to be paid out of the funds raised, although such statute makes it the duty of the district attorneys to prosecute such actions.

7. DISTRICTS FOR THE RECLAMATION OF SWAMP LANDS—STATE OF CALIFORNIA—POWER OF LEGISLATURE—SOURCE OF TITLE TO LANDS.— The power of the legislature of the state of California to authorize the formation of districts for the reclamation of swamp lands within the state at the expense of the lands so reclaimed, is not dependent upon the source or channel through which the title to such lands came.

*A. C. Adams, F. E. Baker,* and *W. B. Treadwell,* for plaintiff.

*W. C. Belcher* and *I. S. Belcher,* for defendant.

SAWYER, C. J. The first point made against the validity of these proceedings, and elaborately argued, is disposed of by the supreme court of the United States in *Davidson v. New Orleans,* 96 U. S. 97, in which it is held that "whenever, by the laws of a state or by state authority, a tax, assessment, servitude, or other burden is imposed upon property for public uses, whether it be for the whole state or of some more limited portion of the community, and *those laws provide for a mode of confirming or contesting the charge thus imposed in the ordinary courts of justice,* with such notice to the person, or such proceeding in regard to the property, as is appropriate to the nature of the case, the judgment in such proceeding cannot be said to deprive the owner of his property without due process of law, however obnoxious it may be to other objections. * * * It is not possible to hold that a party has, without due process of law, been deprived of his property, when, as regards the issues affecting it, he has, by

the laws of the state, a fair trial in a court of justice, according to the modes of proceeding applicable to such a case." With reference to that case the court further observes: "Before the assessment could be collected, or become effectual, the statute required that the tableau of assessments should be filed in the proper district court of the state; that personal service of notice, with reasonable time to object, should be served on all owners who were known and within reach of process, and an advertisement made as to those who were unknown or could not be found. This was complied with; and the party complaining then appeared, and had a full and fair hearing in the court of the first instance, and afterwards in the supreme court. *If this be not due process of law, then the words can have no definite meaning as used in the constitution.*" Id. 105.

So, in this case, no property can be taken from the party except upon a judgment, after a full hearing in a suit to recover the amount of the assessment, in which the legality of all the proceedings is contested and adjudged. That is the very purpose of the present suit, and we are now engaged in ascertaining the validity or non-validity of the assessment in the regular course of due process of law. The assessment does not take the property; it is only taken in pursuance of the judgment after a full hearing. The case cited is conclusive on the point.

The second point relied on by the defence is that the assessment was made, and the law authorized it to be made, without regard to any known or just principle of apportionment, or equality of burden or apportionment.

I do not understand it to be claimed that it was not made in accordance with the statutory provisions in section 33 and other sections; but it is claimed that the statute itself is unconstitutional and void on the grounds indicated. I am not prepared to say that the statute does not require the assessment to be so made as to have some just relation to the benefits resulting from the improvement. The provision is that the commissioners "shall jointly view and assess, upon each and every acre to be reclaimed or benefited thereby, a

tax *proportionate* to the whole expense, and *to the benefit which will result from such works.*" Section 33. This certainly seems to require an apportionment according to benefits. But suppose it does not require the apportionment to be strictly in all particulars in accordance with the benefits, then this point presents a question of constitutional law arising under the state constitution; and the decisions of the supreme court of the state upon such questions are conclusive upon this court when they do not trench upon any of the rights protected by the constitution of the United States. *Hawes v. Contra Costa Water Co.* 5 Sawy. 287; *Walker v. State Harbor Co.* 17 Wall. 650; *Bailey v. Magwire,* 22 Wall. 230; *South Ottawa v. Perkins,* 94 U. S. 260; *State R. Tax Cases,* 92 U. S. 575; *Fairfield v. Gallatin Co.* 100 U. S. 47. In *Davidson v. New Orleans* the supreme court says: "It is said that plaintiff's property had been previously assessed for the same purpose, and the assessment paid. If this be meant to deny the right of the state to tax or assess property twice for the same purpose, we know of no provision in the federal constitution which forbids this, *or which forbids unequal taxation by the states.*" *Davidson v. New Orleans,* 96 U. S. 106. The question, then, rests upon the state constitution as construed by the highest court of the state, and those decisions are against the defendant. This very point seems to me to be determined in *Hager v. Sup'rs of Yolo Co.,* (arising under this same act,) 47 Cal. 234–5; *Burnett v. Mayor of Sacramento,* 12 Cal. 76; *Emery v. S. F. Gas. Co.* 28 Cal. 345; and subsequent cases affirming it settle this question in this state.

The next point relates to impairing the obligation of a contract. I am unable to find any contract, either between the United States and California, or the United States and her patentees or grantees, or between the State of California and purchasers from her, or grantees of the United States, the obligation of which is impaired by the law authorizing the assessment in question. Nor do I think there is any contract found in the charter of the Reclamation District, the obligation of which could be impaired, within the meaning of the constitution, by reason of the fact that the assessment was

levied in violation of the provisions of section 7 of the by-laws, which provides that "the trustees shall allow no indebtedness to accrue in excess of the amount of assessment levied." A similar question seems to have been raised in *Davidson* v. *New Orleans,* and overruled by the state court, which ruling was sustained by the supreme court of the United States. Says the latter court: "If the act under which the former assessment was made is relied on as a *contract against further assessments for the same purpose,* we concur with the supreme court of Louisiana in being unable to discover such a contract." 96 U. S. 106.

In case the first assessment proves insufficient to pay the expenses of a reclamation once inaugurated, the statute itself authorizes a second assessment to be made to make up the deficiency; and the supreme court, in one of the cases arising under this act already cited, holds such second assessment under the act to be valid, notwithstanding the provision in the by-laws now under consideration.

In my judgment, the authorizing the assessments to be collected in gold coin did not impair the obligation of any contract. The states are authorized to require taxes and assessments to be collected in coin if deemed expedient. *Lane Co.* v. *Oregon,* 7 Wall. 73. Gold coin is lawful money of the country, and is legal tender in payment of debts. The statute itself makes no distinction between it and other lawful money also made a legal tender.

I need not inquire whether Reclamation District No. 108 could successfully set up the statute of limitations to any portion of its indebtedness. The defendant is not in a position to raise the question as a defence to this action. The statute might run against its patient creditors, while the Reclamation District is earnestly and vigorously pressing its suits to collect the assessments in order to enable it to pay its debts.

The expenses of collecting the assessments, among which are proper attorney and counsel fees in prosecuting suits for their recovery, are, in my judgment, proper "incidental expenses," within the meaning of the statute, to be paid out of the funds raised; and the fact that the statute makes it the

duty of district attorneys to prosecute such actions, does not prevent the employment of other counsel, in the sound discretion of the officers of the district, in proper cases, to aid in the litigation. *Smith* v. *Sacramento*, 13 Cal. 532; *Hornblower* v. *Duden*, 35 Cal. 668–9. This identical point is said, in complainant's brief, and not denied by defendant, to have been decided by the supreme court of California, December 29, 1879, in three cases: *Reclamation Dist. No. 108* v. *Hickock*, *Same* v. *Howell*, and *Same* v. *Howell et al.* If so, the determination is authoritative.

The supreme court of California have settled the question that, under the constitution of California, the legislature has power to authorize the formation of districts for the reclamation of swamp lands within the state, at the expense of the lands so reclaimed. *Hagar* v. *Sup'rs Yolo Co.* 47 Cal. 223; *People* v. *Hagar*, 52 Cal. 171; *People* v. *Reclamation Dist. No. 108*, 53 Cal. 348; *Dean* v. *Davis*, 51 Cal. 407. This being established, I have no doubt of its authority to include swamp lands which are derived under Spanish grants, or under any other patent from the United States, as well as those derived through the state under the Arkansas act granting the swamp lands to the several states in which they are situated.

The power to reclaim at the expense of the lands no more depends upon the source from or channel through which the title came, than the power to authorize the improvement of the streets of a city at the expense of the adjoining property. There is no contract that lands patented by the United States upon grants to purchasers, or derived from Mexican grants and protected by the treaty, shall be exempt from the burdens imposed upon other property under the police or the taxing powers of the state. The state does not derive its power to reclaim swamp lands from the Arkansas act; nor does it contract by that act not to reclaim other swamp lands, or to limit the expense of reclaiming to the proceeds of sales of those particular lands. Its power to reclaim is wholly independent of the provisions of that act. By accepting the grant it may have imposed upon itself the duty to reclaim the lands granted, but it thereby in no way limited its power

derived from other sources to reclaim those or any other lands. The several swamp-land cases already cited, arising under the act in question, also decide that the legislature has power to include lands held under Mexican grants in reclamation districts.

The point that, conceding the power of the legislature to include the lands of Hagar, held by him under a Mexican grant, in a district formed for the purpose of reclamation, still it did not in fact so include them by the act of 1868, or the provisions of the political code in question, is distinctly decided against the defendant by the supreme court of the state in *Hagar* v. *Sup'rs Yolo Co.* 47 Cal. 223; *People* v. *Hagar*, 52 Cal. 172. This being a construction of a statute of California by the highest court of the state, is conclusive upon this court. The last point, that the assessment is void because not made according to any rule of benefits, etc., has already been considered under another head, and it is disposed of by the authorities already cited. See, particularly, *Hagar* v. *Sup'rs Yolo Co.* 47 Cal. 233-4; *People* v. *Hagar*, 52 Cal. 183; *Davidson* v. *New Orleans*, 6 Otto, 107. No other point appears to me to require special notice. All the questions presented in this case, upon which there ever could have been grounds for reasonable doubt, are, in my judgment, authoritatively settled, either by decisions of the United States supreme court or the supreme court of the state of California.

There must be a decree for complainant, in pursuance of the prayer of the bill, and it is so ordered. Similar decree in the three other cases.