## Case No. 5,638.

### GOULD et al. v. HAMMOND.

[1 McAll. 235.] [1]

Circuit Court, N. D. California. Aug. Term, 1857.

CUSTOMS DUTIES—PERISHABLE GOODS—SALE OF—LIABILITY OF COLLECTOR.

1. When a statute gives a person discretionary powers to be exercised by him upon his own opin-

[1] [Reported by Cutler McAllister, Esq.]

ion of certain facts, it is a rule of construction that the statute constitutes him judge of those facts.

2. In the exercise of that discretion, he is in the discharge not of a ministerial but a quasi judicial function.

3. To render him liable in damages for his conduct, it must be proved, either that he exercised his powers in cases not within his jurisdiction, or in a manner not confided to him, or with malice, corruptly, or oppressively.

4. When upon a report made to the collector by the warehouse keeper, of the perishable condition of goods, the collector directed two United States appraisers to obtain information and report to him the condition of the article; and upon their recommendation of the necessity of an immediate sale, ordered the perishable article to be sold under the proviso of the 1st section of the act of congress, 6th August, 1846 [9 Stat. 53],—held, that in the absence in the argument on the trial of any imputation to defendant of a corrupt motive, the shortness of the public notice of the contemplated sale was not, per se, sufficient evidence of fraud to warrant a judgment against the collector.

This action was brought against the defendant to recover damages arising from an alleged illegal sale of goods under his order as collector of the port of San Francisco. A jury trial was waived by the parties, and the case left to the court on the facts and law. The former are sufficiently set forth in the opinion of the court.

Irving & Wistar, for plaintiffs.

P. Della Torre, U. S. Dist. Atty., for defendant.

McALLISTER, Circuit Judge. It appears from the testimony, that a report having been made by the warehouse keeper that these goods were in a perishing condition, the defendant as collector directed an examination of them to be made, by two United States appraisers; and upon a report made by them that the goods were in a perishing condition and that an immediate sale was necessary, the defendant ordered the goods to be sold. They were sold at public auction, but only on a day's notice, and at prices considerably less than their real value. The defendant justifies the sale on the ground that the goods were in a perishable condition, and such sale was sanctioned by the act of congress of 6th August, 1846,—Dunlop's Laws U. S. 1106 [9 Stat. 53]. The language of the proviso in the first section of the act, enacts, "that all goods of a perishable nature, and all gun-powder, fire-crackers, and explosive substances deposited as aforesaid, shall be sold, forthwith." It was not contended that any fraud or other corrupt motive is to be imputed to defendant. But it is urged, the goods were not in a perishing condition and the notice of the sale was not duly advertised. There is no doubt, that the notice of sale was so brief that nothing short of immediate and pressing necessity could have justified it. But unless the briefness of the notice is to be considered per se, in the face of the other testimony in the case, sufficient evidence of fraud or a

corrupt motive, we cannot consider that fact as concluding this case. If the law left the sale to the discretion and judgment of the collector, misguided views of duty, an error of judgment, free from corrupt motive, cannot render him liable in this action. If a jury had been empaneled in this case, I would have left the evidence of the briefness of the notice of sale to their consideration as a fact on which they should pass; but the court is unwilling in a case where fraud is not imputed, to infer it from that fact alone. The perishable condition of the goods had been reported to the defendant, by the storekeeper; he thereupon referred the matter to two sworn appraisers, and on their report he ordered the sale. It cannot be deemed practicable for a collector to inspect personally each article of every shipment supposed to be perishable. If he consults with merchants of good character, or with sworn United States appraisers, he will be deemed to have taken the usual and ordinary means of arriving at the true condition of the goods and the necessity of a sale, and the degree of promptitude required. Being pro hac vice a judicial officer, the defendant is not liable to an action if he falls into an error, in a case where the act done is not merely ministerial, but one in relation to which his duty is to exercise his judgment and discretion, although an individual may suffer by his mistake. Kendall v. Stokes, 3 How. [44 U. S.] 87.

If a discretion was reposed in him by law the defendant is not punishable, unless it be first proved either that he exercised the power confided in cases not within his jurisdiction, or in a manner not confided to him, as with malice, cruelty, or willful oppression. In Otis v. Watkins, 9 Cranch [13 U. S.] 355, 356, the court say, "This instruction implies that the collector is liable if he form an incorrect opinion, or if in the opinion of the jury it shall have been made unadvisably or without reasonable care or diligence. But the law exposes his conduct to no such scrutiny." If the jury believed he honestly entertained the opinion under which he acted, although they might deem it incorrect, or without sufficient grounds, he would be entitled to their protection. This does not preclude the proof of malice or other circumstances to impeach the integrity of the transaction. In Martin v. Mott, 12 Wheat. [25 U. S.] 31, it is said: "Whenever a statute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction that the statute constitutes him the sole and exclusive judge of the existence of those facts." Wilkes v. Dinsman, 7 How. [48 U. S.] 89, 132. It is urged that the discretion of the collector may be abused and perverted to oppressive purposes. This argument will apply to every case in which discretion may have been reposed in an individual. It would be impracticable to carry

on the government in all its details without confiding in some instances in the judgment and discretion of public officers; and the numerous decided cases which have enunciated the principles which regulate the responsibility of public officers in whom a discretion has been reposed by law, establish not only those principles, but the numerous instances in which the legislature have been constrained to impose on officers the duty of doing acts involving on their part the exercise of discretion and judgment. The argument that discretion may be abused, is to be addressed to the legislature as to the expediency of imparting any. When it is given, it is the duty of the court to see that the legal principles are applied to each case in which a controversy as to its exercise may arise. No better settled principle exists than the one enunciated by foregoing authorities. A contrary one, in the language of Chief Justice Taney, would indeed "be pregnant with the greatest mischief." [Kendall v. Stokes] 3 How. [44 U. S.] 98. In municipal seizures, the party who seizes does so at his peril, with the knowledge that their legality is to be tried by tribunals to which the adjudication of them is awarded. If condemnation follow, he is justified; if an acquittal, he must refund in damages for the tort, unless he can shelter himself under some statute. The seizure is deemed a ministerial act; hence, various statutory provisions have been passed, enabling the party to protect himself in the event the goods seized are not condemned, by procuring from the court a certificate of probable cause of seizure. These cases of municipal seizure do not apply to this case. This action is not brought for damages, for the commission of a mere ministerial act. The statute on which defendant relies, authorized and required him as collector, to sell forthwith all perishable goods and explosive substances. In the performance of that duty, he had to form a judgment as to the condition of the goods, and that judgment must be necessarily based upon the facts. Now we have seen that where a statute gives a person discretionary power to be exercised by him upon his opinion of certain facts, it is a sound construction that the statute constitutes him the sole and exclusive judge of the existence of those facts. Martin v. Mott, 12 Wheat. [25 U. S.] 31. In the case at bar, the statute required him to sell forthwith, perishable articles. To sell any other would have been an abuse of power. To perform the duty imposed upon him, he must, ex necessitate, pass upon the question of perishability or explosiveness. How otherwise could the fact have been ascertained? The law provides no other way. His duty was not, as in case of a municipal seizure, to hold the goods to await judicial action; but having them in possession, they "shall" be sold "forthwith." How can he sell without ascertaining the condition of the goods? What can he invoke for the exami-

nation save his own. intellect, the discretion and judgment to which the law had left it? If, when he is impelled by no corrupt motive, ·or negligence so gross as to amount to fraud, the facts on which he acted are to be .submitted to a jury in every case in which .a party may feel aggrieved, then those facts which the law has confided to the discretion .and judgment of the collector will be transferred to juries whose verdicts in different ·cases might embody different results upon similar statements of facts. It would subject the officer to indefinite liability, and seriously embarrass the government in the exe-·cution of the laws; for in a case like the· present, the validity of the sale and the title ·of the purchaser of the goods, would depend ·on the opinions of the jury as to the facts .acted on by the collector. It has been urged ·very strongly that the case of Warne v. Varley, 6 Durn. & E. [6 Term R.] 443, is conclu-:sive in favor of the plaintiffs in this case. Now, that case simply affirms the distinction between a ministerial and a judicial or quasi judicial act. The action was against defendants for an alleged illegal seizure and detention of goods. The defense was, that defendants were appointed under an act of parliament which authorized them to view and search all tanned hides and skins that .should be brought to Leadenhall market. That plaintiffs had offered for sale in the market hides which had not after the tanning thereof been well and thoroughly dried, in the judgments of the defendants, according to the true intent and meaning of the :said act of parliament; wherefore defend-.ants had seized and carried them away until it might be duly tried in manner as directed ·by said statute; and that they had given due notice to the lord mayor, that triers might ·be appointed for trying the same according to the statute, &c. The plaintiffs replied, that the said skins were dried according to the true intent of the statute, that they had been ·duly tried ˙by persons appointed by the lord mayor, who determined that the said skins were properly dried, and that said leather had been restored to them. Now, in that ·case the statute, so far from reposing any ·discretion, any quasi judicial power in the seizors, expressly excluded them from it by .reserving the question of fact to be ascertained by others, to ˙ be appointed in the mode prescribed by the statute. The search-·ers were in the position of those who make a municipal seizure. They were only justified in making˙ seizures in cases deemed legitimate by the appropriate tribunal to which the adjudication of them was confided. The law only authorized them to ·seize undried leather, within the meaning of the statute; and whether the seizure was legal did not depend upon the judgment or discretion, however honest, of the seizors; but on those of others selected by the law, .and subject to whose decision the seizure ˙was made. The act of the former was

deemed merely ministerial; that of the latter was quasi judicial. The language of Mr. Justice Lawrence renders it evident, that the distinction between the two kinds of acts was kept in view. "It is clear (he says), that in all cases, where a protection is given to a judge, it is incumbent on the party justifying the particular act to show he was act-ing as a judge. In this case the defendants were not acting as judges; they had seized the leather in order to carry it before other persons,—the triers, who were to act as judges." 6 Durn. & E. [6 Term R.] 450. It is clear, then, that the seizors were not act-ing in the exercise of a quasi judicial power; because all discretion as to the condition ˙of the goods was expressly vested out of them, and in others, by the very law under which˙ themselves acted. Had those persons have found against the leather, and the owner had sued them, nothing short of a corrupt motive could have rendered them liable in damages. It does not appear to the court that the fore-going case conflicts with the principles enun-ciated by preceding decisions.

The second ground taken by plaintiffs is, that they are entitled, independently˙ of all other considerations, to a verdict, because the sale of the goods was not made· in conform-ity to law. The 12th section of the act of 1842 [5 Stat. 561], amended by the act of August, 1846,—Dunlop's Laws, 1106 [9 Stat. 53],—which authorized the sale, applies to two distinct classes of goods. The body of the section refers to one class of goods to be sold, viz. such as have been deposited in the public stores, and shall have remained there-in one year without the payment of duties and charges. Such it directs to be appraised by the U. S. appraisers, and if there be none, then by two respectable merchants appointed and sworn by the collector; and after such appraisement they shall be sold at public auction, on due public notice as prescribed by a general regulation of the treasury depart-ment; that at said public sale distinct print-ed catalogues with the appraised value there-of shall be distributed, and a reasonable opportunity afforded to persons to purchase. The foregoing details are made to protect the sale of the first class of goods; and a neglect of any one essential particular would render a collector liable. These details enumerated in the enacting part of the sec-tion, are not even inferentially alluded to· when the act speaks in its proviso of the second class of goods, the perishable and ex-plosive articles. This proviso declares, that all such shall be sold forthwith. It has been urged that the details regulating the sale of the first class of goods, apply to the second, mentioned in the proviso. The office of .a proviso is generally either to except some-thing from the enacting clause, or to qualify and restrain its generality, or ·to exclude some possible ground of misinterpretation of it as extending to cases not intended by the legislature to be brought within its purview.

Minis v. U. S., 15 Pet. [40 U. S.] 445. When, therefore, the legislature, as in this case, in the proviso declares that all goods of a perishable nature shall be sold forthwith, it expressly exempts such from the provisions of the enacting clause. It seems, that when congress directed the immediate sale of the second class of goods they intended to commit the regulation of the sale exclusively to the collector, as no precise rules could be prescribed without the hazard of defeating the whole law in regard to perishable goods. It cannot, therefore be justly considered that the details of sale enumerated in the body of the twelfth section, apply to the second class of goods, referred to in the proviso. The rule of law enunciated by the decisions is well settled. The court cannot relax it. It must be uniform, though it may operate harshly in particular cases. The defendant having honestly exercised his discretion, whatever view may be taken of the erroneous or mistaken manner in which he acted, he cannot be made responsible in this case. Let judgment be entered for the defendant.