[No. 2,773.]

## GEORGE K. PORTER *v.* HENRY H. HAIGHT, WILLIAM HOLDEN, AND H. L. NICHOLS.

CONTRACTS FOR EMPLOYMENT OF CONVICT LABOR.—Conceding that the Board of State Prison Directors have power to enter into contracts for the employment of convict labor, that power must be limited by the requirements of the Act creating the Board and prescribing its powers and duties.

IDEM.—The Board of State Prison Directors have no power under said Act to enter into any contract for the employment of convict labor that would deprive it in any degree of the full and exclusive control of the prisoners and prison labor, or of the prison grounds, buildings, and property.

IDEM.—If the Board of State Prison Directors enter into a contract for the employment of convict labor, which is not void under the above rule, they have the right to terminate it whenever in their judgment the proper exercise of the powers conferred upon them may require it.

LIABILITY OF PRISON DIRECTORS FOR ANNULLING CONTRACT.—Whether the exigence of a particular case requires the Board of Prison Directors to annul a contract they have made for the employment of convict labor, is a question which addresses itself to their judgment, and their determination on the matter is in the nature of a judicial and not of a ministerial act, and for which, if they act without fraud or malice, they do not incur personal liability.

POWER OF COURTS OVER PUBLIC OFFICERS.—When the State, by legislative Act, confers upon a Board of public officers jurisdiction to exercise their judgment and discretion upon matters within their power to perform, the Courts cannot review the question whether that discretion was properly exercised.

APPEAL from the District Court of the Seventh Judicial District, County of Marin.

This is an action of trespass for a forcible interference with the plaintiff's business and trade property.

The defendants were the Board of Directors of the State Prison, at San Quentin, and were the successors in office of the Board which made the contract, in 1865, as hereinafter mentioned, and entered upon the discharge of their duties on the first Monday in December, 1867, to continue in office four years thereafter.

The plaintiff was engaged in the manufacture of leather work at the State Prison, occupying, by permission of the prison authorities, a shop belonging to the State, in which he had set up machinery and trade fixtures. In 1863 he entered into a contract with the State of California, by the Board of State Prison Directors, for the employment of a number of convicts for three years. In 1865 the contract was extended, at the option of the plaintiff, four years after September 1st, 1866, and he elected to so extend it. In 1868 the defendants gave the plaintiff notice that they regarded the extension of the contract of no binding effect

upon them, and by resolution fixed the terms and conditions for a new leasing.   Under this new arrangement the plaintiff paid, under protest, one month's hire for the convict labor employed by him; but during the second month, failing to make such payment in full, the Board declined to furnish any convict labor.   The plaintiff then brought this action, claiming damages in the sum of sixty-eight thousand dollars.   The defendant had judgment, and the plaintiff appealed.

*B. S. Brooks*, for Appellant.

The contract set out in the complaint was a valid contract between the plaintiff and the State.   (Act of March 21st, 1856, Stats. 1856, p. 48; *State* v. *McCauley*, 15 Cal. 430; *McCauley* v. *Brooks*, 16 Cal. 11; *Hosmer* v. *Wood*, 15 Barb. 371; s. c. 23 N. Y. 350; *Williams* v. *Keach*, 4 Hill, 168.)

The whole history of the State Prison management shows that such was the intention of the Legislature.

1856—Act of March 21st, 1856, Stats. 1856, p. 48.

1858—Act of March 26th, 1858, Secs. 3, 9.

1860—Appendix to Senate Journal; report of the history, giving the Trustees to that date.

1861—Report of committee recommending the building of shops.

1862—Appendix to Senate and Assembly Journal; report of Directors gives contracts; Senate Committee report; contracts; Senate Journal, p. 33; Governor's Message.

1863—Appendix; report of Directors; report of Joint Committee.

1864—Appendix, Vol. 2 (Senate report mentions this contract with plaintiff, its terms and conditions); Assembly Committee report; Appendix, p. 2, report of Directors.

1866—Senate Journal, Governor's Message, Vol. 2, Ap-

pendix; report of Directors; Commissary report; number of persons working on shoe contract, 67, Vol. 3, Appendix; report of Committee.

1868—Senate Journal; Governor's Message; Appendix to Journal of Assembly, Vol. 2; report of Directors; Commissary report, Vol. 2; report of Assembly Committee; Appropriation Act; Appendix to Assembly Journal; report of State Prison Directors; eighty-one prisoners working in boot and shoe factories; report of Joint Committee on visit to prison; full examinations, recommended additional shops.

Its validity is recognized by subsequent legislation. (*McCauley* v. *Brooks*, 16 Cal. 11; Act of April 4th, 1864, Stats. 1863–4, p. 356; Act of March, 1868, Stats. 1867–8, p. 111.

The question of good faith or malice is not involved in the case. Ignorance of the law does not excuse. A person who violates the legal rights of another is always responsible for the damages, no matter how innocent of guile he may be or unconscious of wrong. His ignorance will not excuse him. (*Levitzky* v. *Canning*, 33 Cal. 308; *Imlay* v. *Sands*, 1 . Caines, 372; *People* v. *Brooks*, 1 Denio, 458; *Wilson* v. *The Mayor, etc.*, 1 Denio, 599; *Rochester W. L. Co.* v. *Rochester*, 3 Comst. 464; *Warner* v. *Varley*, 6 Term R. 449; *Dennison* v. *Plumb*, 18 Barb. 89.)

One who by contract with the State assumes the duties and is invested with the powers of a public officer, is liable to an individual who sustains special damage by a neglect properly to perform such duties. (*Robinson* v. *Chamberlain*, 34 N. Y. 389; *Richardson* v. *Crandall*, 47 Barb. 366; *People* v. *Albany*, 11 Wend. 539; *Downer* v. *Lent*, 6 Cal. 95; *Adsit* v. *Brady*, 4 Hill, 632; *Fisk* v. *Dodge*, 38 Barb. 163.)

*Jo Hamilton, Attorney General,* and *Hambleton & Gordon,* for Respondents.

This extension of the leasehold term was not only co-extensive with the official existence of the Board making

it, but intruded upon and overlapped the official term of the succeeding Board (the present respondents), some two years and eight months.

The public officers of the State, acting in their official capacity, without fraud, malice, or wantonness, and within their jurisdiction, are not liable to an action of damages at the suit of a party aggrieved thereby, even though their action has been erroneous. For their mistakes of judgment under such circumstances, the party's sole recourse is to the Government. (*Daws* v. *Jackson*, 9 Mass. 490 ; *Downer* v. *Lent*, 6 Cal. 94 ; *Gould* v. *Hammond*, 1 McAllister, 235; *Jenkins* v. *Waldron*, 11 Johns. 114; *Harman* v. *Tappensen*, 1 East. 555; *Sutton* v. *Clarke*, 6 Taunton, 29; *Burton* v. *Fulton*, 49 Penn. St. 151; *Nourse* v. *Lord Seymour*, 13 Beavan, 254; *Garlinghouse* v. *Jacobs*, 29 N. Y. 310; *Young* v. *Commissioners of Roads*, 2 Nott & McCord, 537; Sedgwick on Stat. and Constitutional Law, 102, 103.)

In deliberating upon the question of contract or no contract, between plaintiff and the State, in determining whether it was to them anything more than a license, revokable at will, the defendants necessarily became vested with functions quasi judicial, and in the language of *Downer* v. *Lent* are not civilly answerable. Under the statute law, as they, in their best judgment, construed it, they were imperatively called upon to determine either that the law was binding upon them "to take full and exclusive control and management of the prison labor," or else to find that by force of this asserted contract that labor was withdrawn from their supervision and control. In the assumption of this duty they were not mere volunteers, but by the very terms of the Act it became incumbent on them to decide, and the performance of that duty required the exercise of judgment. The functions of these officers were certainly as much judicial in their nature as those exercised by Boards of Supervisors in granting a ferry license or allowing a claim. And

yet it has been repeatedly held in this State that the determination of such question involves the exercise of judicial discretion. (*Fall* v. *Paine*, 23 Cal. 302; *Murray* v. *Board of Supervisors*, 23 Cal. 492; *People* v. *Board of Supervisors*, 28 Cal. 429.)

The amount of discretion and the scope of its exercise is governed, too, by the question of power and jurisdiction given under the statute.

Long acquiescence or mere silence may sometimes amount to a presumption of ratification between private parties, but a State, as a principal, can only be bound by some Act of its Legislature. (*Delafield* v. *State of Illinois*, 2 Hill, 175; *Delafield* v. *State of Illinois*, 26 Wend. 192.)

The authority cited by the other side, of *McCauley* v. *Brooks*, 16 Cal. 26, is not in point, nor are the situations of the cases analogous, for in that case there was positive legislative proceeding in aid of the contract, appropriating moneys, etc.

There is a well known distinction between different classes of public officers, some of whom are responsible to private individuals, and some who are not. The first class are such as Sheriffs, Clerks, and Constables, who perform specific services for particular persons, for a compensation; also those who by contract assumed certain public functions that are "farmed out" to them. All these owe a duty to individuals, and are civilly responsible to them. The second class are such public persons as Boards who by statute are invested with the duty of performing public works, and means are provided therein for effecting the objects aimed at, and a fund raised by virtue of its provisions, from which fund damages incurred by any one in the prosecution of the enterprise are paid.

But the defendants belong to a third class, and neither owe, by virtue of their contract with the sovereign power, any such duty to third persons, nor are they provided with

funds to defray the expenses of their administration, resulting in losses to third persons.

By the Court, NILES, J.:

We have not been referred to, nor can we find any statute which directly authorizes the Board of Directors to enter into any contract for the employment of convict labor. The Act of April 24th, 1858, prescribing the powers and duties of the Board, contains no such authorization. This power may, perhaps, be inferred from the general power, given to the Board by this Act, to manage and control the convicts and prison labor, and from an implied recognition by the Legislature of the validity of such contracts contained in section three of the Act of April 4th, 1864, relating to the pardon of criminals, which provides that " every contractor employing convict labor shall keep a record of the conduct of all prisoners employed by them," etc. (Stats. 1863–4, p. 356.)

Conceding, for the purposes of this case, the existence of the power, its extent, being undefined by any statute especially relating to that matter, must be limited by the requirements of the Act creating the Board, and prescribing its powers and duties. (Stats. 1858, p. 259.)

Section one constitutes the Governor, Lieutenant Governor, and Secretary of State a Board of Directors, and makes it their duty to take charge of the State Prison, and have the management and control of " State Prison convicts."

Section three provides that " said Board shall have full and exclusive control of all the State Prison grounds, buildings, prisoners, prison labor, prison property, and all other things belonging or pertaining to said State Prison."

It is evident that the Board would have no power to enter into any contract for the employment of convict labor, or for

any other purpose, that would deprive them in any degree of the full and exclusive control of the prisoners and prison labor, or of the grounds, buildings, and property with which they are charged by the Act. To that extent, at least, any such contract would be inoperative and void.

It seems to us equally clear, that if at any time after the making of a contract originally free from the vice we have mentioned, circumstances should arise which would, in the judgment of the Directors, render the continuance of the contract incompatible with the safety of the convicts, or the proper management of the prison, it would be their right and duty to terminate it. This is a power of which they cannot deprive themselves by contract. It is imposed upon the Board by the Act which created it. For instance ground within the prison walls, and for manufacturing purposes under contract with the Board, might be required for the erection of prison buildings, or a conspiracy might be detected, which, in the judgment of the Board, required the separation or close confinement of prisoners whose labor had been contracted for; would it be said in either case, that it was not in the power of the Board to resume possession of the ground, or control of the prisoners, and thereby effectually annul the contract?

By section seven of the Act the Board are required to remove to the site of the Branch Prison, when selected, such a number of convicts as they may deem proper. The performance of this duty might result in the virtual annulment of many contracts; yet it would hardly be claimed that it should not, for that reason, be performed.

In entering into a contract for the employment of prison labor, the contractor must be held to bargain in view of the right of the Directors, acting in behalf of the State, to annul the contract whenever the paramount obligation to execute the powers conferred upon them by the Legislature may require it.

Whether the exigence of a particular case requires such action is a question which addresses itself to the discretion and judgment of the Board. It is in the nature of a judicial and not of a ministerial act, and the liabilities of the Board are those which attach to the judicial officers in the exercise of judicial functions.

There is no question at this day as to the nature and extent of this liability.

In *Martin* v. *Mott*, 12 Wheaton, 31, it was said by Mr. Justice STORY that "whenever the statute gives a discretionary power to any person, to be exercised by him upon his own opinion of certain facts, it is a sound rule of construction that the statute constitutes him the sole and exclusive judge of the existence of these facts."

In *Jenkins* v. *Waldron*, 11 Johns. 121, it was said: "It would, in our opinion, be opposed to all the principles of law, justice, and sound policy to hold that officers, called upon to exercise their deliberate judgments, are answerable for a mistake in law, either civilly or criminally, when their motives are pure and untainted with fraud or malice."

In *Kendall* v. *Stokes*, 3 Howard, 98, TANEY, C. J., says: "A public officer is not liable to an action if he falls into error in a case where the act to be done is not merely a ministerial one, but is one in relation to which it is his duty to exercise judgment and discretion, even though an individual may suffer by his mistake."

The same doctrine is held in numerous cases both in England and America, and is settled by authority as well as supported by sound reasoning.

In this case no fraud or malice upon the part of the defendants is alleged or proven. The act of which the plaintiff complains was the withholding of the convict labor to which he claims to have been entitled under the terms of his contract with the former Board. This act the Directors might lawfully do, whenever, in their judgment, it became

necessary.    It was within their jurisdiction to determine
upon this course.    Whether their discretion is properly ex-
ercised is not a question for review by the Courts.

The plaintiff is not left without remedy.    His remedy,
however, as was held by the Court below, is, in fact, only
against the State.    In a case of hardship (as, from the evi-
dence found in the record, this appears to be) the State, by
its Legislature would probably, and very properly, relieve a
party from a loss occasioned by the act of its own agents.

Judgment and order affirmed.