LEVI APGAR, Respondent, *v.* JOHN N. HAYWARD et al., Appellants.

Upon an annual record of assessed valuations of property in a ward in the city of New York, filed in the office of the commissioners of taxes and assessments of said city as required by the act of 1859 (Chap. 302, Laws of 1859), the real estate of a banking corporation was valued, and upon the same record the names of certain stockholders of the bank appeared with an "assessed valuation" of their shares of stock at $23 per share. This was arrived at by deducting from the value of the shares the assessed value of the real estate, as authorized by the act of 1866 (Chap. 761, Laws of 1866.) Subsequently, and within the time prescribed by said act of 1859, but too late to give the stockholders the twenty days notice required thereby (§ 11) in case of an increase of an assessment, upon petition of the president 'of said bank, and upon hearing and examination, the valuation of its real estate was reduced, and the assessed valuation of the shares was thereupon proportionally increased. In an action by a stockholder against the commissioners to recover for property taken to pay the tax upon his shares on the ground that it was illegally imposed, *held,* that the correction of the erroneous assessment of the real estate made an increase in the assessment to the shareholder necessary, and was within the jurisdiction of the commissioners to make; that in dealing with the question they exercised a judicial function, and in the absence of proof that there was error, maliciously perpetrated, no action lay against them.

*It seems* that in case the commissioners in making the change acted without jurisdiction they would only be liable for the damages actually sustained by the shareholder, *i. e.,* the difference between the tax called for by the original and the increased valuation.

*Apgar* v. *Hayward* (21 J. & S. 357) reversed.

(Argued June 6, 1888; decided October 2, 1888.)

APPEAL from judgment of the General Term of the Superior Court of the city of New York, entered upon an order made May 12, 1886, which overruled defendants' exceptions and directed judgment on a verdict. (Reported below, 21 J. & S. 357.)

The nature of the action and the material facts are stated in the opinion.

*D. J. Dean* for appellants. The defendants having jurisdiction of the persons and property assessed, are not liable in damages for erroneous action, or illegal procedure, after jurisdiction acquired. (*Williams* v. *Weaver*, 75 N. Y. 30; *Bank of Chemung* v. *Elmira*, 53 id. 49; *Darwin* v. *Strickland*, 57 id. 492; *Overing* v. *Foote*, 65 id. 263; *Weaver* v. *Devendorf*, 3 Denio, 117; *Barhydt* v. *Sheppard*, 35 N. Y. 238; *Westfall* v. *Preston*, 49 id. 352.) In order to accomplish the object of the statute the proportion of value of each share assessed as personalty against the shareholder will increase as the amount assessed against the bank for real estate is decreased, and *vice versa*. (*People ex rel. Van Ness* v. *Tax Commissioners*, 80 N. Y. 573; *People ex rel. Twenty-third St. R. Co.* v. *Tax Commissioners*, 95 id. 554.) The validity of the increase of assessment and of the tax is conclusively presumed in a collateral action, and in the absence of a judgment declaring the tax void the plaintiff cannot recover. (*Swift* v. *Poughkeepsie*, 37 N. Y. 511; *Bank of Commonwealth* v. *Mayor, etc.*, 43 id. 184; *Peyser* v. *Mayor, etc.*, 70 id. 497; *Horn* v. *New Lots*, 83 id. 100; *Newman* v. *Supervisors of Livingston*, 45 id. 676; *Strasburg* v. *Mayor, etc.*, 87 id. 452.)

*Nelson Smith* for respondent. After the first day of May the defendants had no jurisdiction whatever to increase or in any manner tamper with the assessed valuation as it appeared in the Annual Record, except to grant applications for a decrease during May, under chapter 134, Laws of 1881, in cases where the application had been filed prior to May first. (*Clark* v. *Norton*, 58 Barb. 434; *S. C.*, 3 Lans. 484; affirmed,

49 N. Y. 243; *Westfall* v. *Preston,* 49 id. 352; *Overton* v. *Foote,* 65 id. 263; 43 id. 290, 297; *Mygatt* v. *Washburn,* 15 id. 316; *People ex rel. Chamberlain* v. *Forrest,* 96 id. 544.) Any excess in the amount of an assessment, beyond that stated in the Annual Record, would make the whole tax imposed upon it void. (*Huse* v. *Merriam,* 2 Greenl. 375; *Stone* v. *Bean,* 15 Gray, 42, 44; *Libby* v. *Burnham,* 15 Mass. 144; Cooley on Taxation, 295, 297.) Trespass is the appropriate remedy to recover for an injury occasioned by an illegal tax, and the assessor or other officer who exceeded his authority is liable. (*Huse* v. *Merriam,* 2 Greenl. 375; *Westfall* v. *Preston,* 49 N. Y. 349; *Agry* v. *Young,* 11 Mass. 220; *Ware* v. *Percival,* 61 Me. 391; *Inglee* v. *Bosworth,* 5 Pick. 498; *Mygatt* v. *Washburn,* 15 N. Y. 316.) Before a tax upon an illegal assessment has been imposed the court, even where the assessors have acted without jurisdiction in increasing the assessment, may correct it by reducing it to the proper amount on the application of the person affected by it. (*People ex rel. Chamberlain* v. *Forrest,* 96 N. Y. 544.) The proceedings of the defendants, depriving the plaintiff of an opportunity of being heard against the assessments, make the assessment void and render them liable as trespassers. (Cooley on Taxation, 266, 267.)

DANFORTH, J. The action is against the defendants, as commissioners of taxes and assessments in the city of New York, for acts done by them in the year 1881, in consequence of which the plaintiff charges that his property and that of other persons, his assignors, was taken and applied to the payment of taxes illegally imposed. Upon trial in the Superior Court of the city of New York, it appeared that the plaintiff and his assignors were residents of New York city, and owners respectively of certain shares in the North River Bank, an institution located in the Third ward of that city, with a capital of $240,000, divided into 8,000 shares; that in January, 1881, the annual record of assessed valuations of real and personal estate was filed in the office of the commissioners of taxes, and

upon that record the real estate of the bank was valued at $96,000, of which $94,800 was the assessed value of its banking house. Upon the same record the names of the plaintiff and his assignors appear as holders of shares with an "assessed valuation" at the rate of $23 per share. This sum was reached by allowing each shareholder in the assessed valuation of their shares the benefit of a reduction from their real value in the same proportion as the assessed value of the real estate of the bank bore to the whole amount of its capital stock. In that respect the commissioners are sustained by the act of 1866 (Laws of 1866, chap. 761). This act prohibits any assessment upon bank capital, but leaves its real estate subject to the same taxation as is that of other owners, and makes the stockholders in the bank liable to assessment on the value of their shares after deducting therefrom the assessed value of the real estate of the bank. The commissioners, therefore, in the course of their official duty, first spread that assessed value, viz., $96,000, over 8,000 shares, making $12 to be applied on each share, and then fixed the assessed value of such share at $23. This shows the actual value of the share, according to the estimate of the commissioners, to have been $35. Up to this point no complaint is made of the action of the commissioners. They, however, subsequently changed the assessed value from $23 to $28, thus adding $5 per share, making in gross an addition upon the 8,000 shares of $40,000, and the real question in the case is, whether the change was within the authority of the defendants. The court below held that it was not, and as it appeared that the tax was collected, judgment was awarded against the defendants for the entire tax upon the valuation of $28 per share of the stock held by the plaintiff and his assignors.

In any view of the case we think there is error in the judgment. It is not denied that the shares were liable to taxation to some extent. Indeed, the plaintiff's claim concedes that the assessed valuation was correctly made. His contention is that the increase, by the corrected valuation, was illegal. It is not claimed, however, that the commissioners acted in bad

faith, or from an ill motive, or with any other purpose than the performance of official duty, and from these circumstances it would, at least, follow that their liability could not exceed the actual damages sustained by the taxpayer. Those damages, if any, are represented by the difference between the sum due under the assessed valuation, and the sum called for by the corrected valuation, viz., $5 per share. But another objection is taken by the appellants, which goes to the foundation of the action, and the conclusion to which we have come on that makes it unnecessary to discuss the former. This objection is based upon the provisions of the statute which confers jurisdiction upon the defendants as "tax commissioners of the city of New York." As such they constitute a board which superseded the offices of ward assessors and commissioners of taxes theretofore existing in that city. (Laws of 1859, chap. 302.) Their jurisdiction extends throughout the city, and under their direction all the taxable property therein is to be assessed (§ 7), and its "assessed valuation" entered in books to be kept by them and called "the annual record of the assessed valuation of real and personal estate." These books are required to be open for examination and correction from the second Monday of January to the first day of May in each year, with notice by advertisement of that fact, in such manner as they may deem advisable, and are to be then closed to enable the commissioners to prepare assessment-rolls of the several wards for delivery to the aldermen.

The statute also provides (§ 10) that during the time above mentioned application may be made by any person considering himself aggrieved by the assessed valuation of his real or personal estate, to have the same corrected, requires the commissioners to examine the complaint, and declares that " if, in their judgment, the assessment is erroneous, they shall cause the same to be corrected."

The plaintiff in this case was the president of the North River Bank, and on the 30th day of April, 1881, and, therefore, within the time prescribed for such application, he caused to be presented to the commissioners the petition of the bank,

signed by himself as its president, alleging that the assessed value of the banking-house, viz., $94,800, was too high by at least two-thirds, and prayed that it be reduced accordingly. Upon hearing and examination the petition was to some extent granted, and on the thirtieth day of April the assessed valuation of the property was fixed at $54,800, a reduction of $40,000. No complaint was made as to the gross valuation of the shares, and it seems obvious, in view of the act of 1866 (*supra*), that the diminution in the assessed value of the real estate required a change in the assessed value of the shares, otherwise the value of the shares would not be assessed, and a portion of the property of the bank would escape taxation. Upon the assumption that the real estate of the bank was worth $94,800, so much was credited to the stockholder and the balance only of the share assessed. If the original assessment of the real estate was erroneous, it is clear that its correction made necessary some correction or alteration in the assessment to the shareholder, and the making of such correction or alteration was within the jurisdiction of the commissioners and within the scope of their authority, unless restrained by a provision of the act, that of 1859, already referred to. It is provided by section 11 of that act that the commissioners may, at any time before the second day of April in each year, increase the assessed valuation of any real or personal estate, as in their judgment may be necessary for the equalization of taxation, "but" — and upon the construction given to this clause the plaintiff has so far succeeded in the action — "but they shall not increase such valuation after said books are open for examination and review, except upon notice being given to the party affected by such increase, twenty days before the closing of the books." There is an incongruity in these statutes which renders it impossible to adapt this provision to that embodied in section 10 of the act of 1859, and at the same time give proper effect to chapter 761 of the Laws of 1866 (*supra*). By the latter the assessed valuation of the shares of stock, personal property, depends upon the assessed valuation of the real estate of the bank. By the act of 1859

(§ 10) the assessed value of the real estate of a bank may be changed at any time while the books are open, and that is up to the first of May, but the valuation of neither real or personal estate can be increased except upon previous notice of twenty days. The reduction of the valuation of the real estate of the bank was therefore legal under this statute, but notice of the increase of the assessed value of the shares was impossible, owing to the late application of the bank in relation to its real estate. This delay should not be to the advantage of its stockholders, nor to the prejudice of the defendants. The correction of one valuation made necessary the alteration in the other.

If we look at the literal language of the statute of 1866 (*supra*), and the literal language of section 10 of the act of 1859 (*supra*), it is impossible not to see that the defendants have kept within the terms of each, and we think they were justified in correcting the record as to the shares by making it conform to the result required by these statutes. They did not, in fact, increase the assessed value of the shares, but simply withdrew from the shareholder the benefit of a credit to which he became disentitled, and which was, erroneous in consequence of the reduction involuntarily made in the valuation of the banking-house. There seems to be an essential difference between an increase of assessed valuation of an item of property standing by itself, and an item of property which for the purpose of valuation cannot be separated from other property and upon the true value of which the assessed value of that item must depend. In the latter case the change is rather formal than substantial, and, as applied in the case before us, is like an error in arithmetic, clerical and not substantial. The tax is not increased, but is differently distributed, yet practically coming from the same fund, for whether paid directly by the bank out of dividends, as, under section 6 of the Laws of 1866 (*supra*), it might have been, or by the stockholder directly, as in this instance it was, would make no difference; in either case it would come out of his funds or credits, and the aggregate, whether imposed on real estate or on the shares, would be the same, and in no respect exceed

his just proportion of the general tax. But however that may be, it is apparent that the defendants, as commissioners, had jurisdiction over the person of the shareholder and over the subject of the tax. In dealing with the question brought before them they exercised a judicial function, and, if in error, no action lies against them unless that error was perpetrated maliciously.

The judgment appealed from should, therefore, be reversed and a new trial granted with, costs to abide the event.

All concur, except PECKHAM, J., dissenting.

Judgment reversed.