BAILEY v. BERKEY et al.

(Circuit Court, N. D. California. July 12, 1897.)

No. 12,350.

1. TAXATION—LIABILITY OF ASSESSOR FOR MALICIOUS EXCESSIVE ASSESSMENT.
   An assessor, though acting judicially when listing property for assessment, and not liable for mere errors or mistakes of judgment, is liable for damages resulting from an excessive assessment made maliciously or corruptly.

2. SAME—PLEADING.
   In an action against an assessor to recover damages for an excessive assessment maliciously made, allegations as to the existence of a mortgage on the property assessed are material and germane.

Action at law against an assessor and the sureties on his official bond to recover $10,000 damages for an excessive assessment alleged to have been made maliciously upon plaintiff's property. Demurrer that the complaint does not state facts sufficient to constitute a cause of action. Demurrer overruled. Motion to strike out parts of the complaint denied.

A. P. Catlin (J. H. McKune, of counsel), for plaintiff.
Elwood Bruner, for defendants.

MORROW, Circuit Judge. This is an action on the case to recover the sum of $10,000 damages for an excessive assessment upon plaintiff's real property, situate in the county of Sacramento, state of California. The complaint alleges that the plaintiff is a citizen of the state of New York, and that the defendants are, and have been for more than four years next preceding the commencement of this action, citizens of the state of California. The defendant F. H. Berkey is alleged to have been the duly elected, qualified, and acting assessor in and for the county of Sacramento, state of California, and that the other defendants are the sureties on the official bond of the said Berkey as assessor. The complaint further avers that the defendant Berkey, as such assessor, listed the real property of plaintiff for the fiscal years 1896 and 1897, and in said list valued the improvements on said property at the sum of $40,300, when in fact the value of the said improvements did not exceed the sum of $20,000; that in making such valuation the defendant Berkey did not honestly or fairly fix in said assessment list said valuation at $40,300 according to his judgment, but, on the contrary, well knowing that the said improvements were not of any greater value than $20,000, fraudulently, and with a distinct intention on his part to oppress and injure the plaintiff and compel him to pay taxes on $20,300 over and above the actual value of such improvements, listed the said improvements at the valuation of $40,300, and returned said list so fraudulently and wrongfully made to the board of equalization of the said city of Sacramento; that plaintiff subsequently applied to the board of equalization to reduce the aforesaid wrongful valuation of said improvements, which application the said defendant Berkey, with the aforesaid intent to oppress

and injure plaintiff, did then oppose, and, moved thereunto by such opposition, said board refused to reduce said valuation, and the proper authorities of said county levied as a tax on said improvements the sum of $1.45 on each $100 of such valuation. It is further alleged that on the 30th day of January, 1895, the board of regents of the University of California loaned the plaintiff $30,000 of the funds of said university in their charge as such regents, and to secure the payment thereof the plaintiff executed and delivered to said regents his mortgage, mortgaging to them the real estate hereinbefore described, which mortgage, before the first Monday in March, 1895, was duly recorded in the office of the county recorder of said county of Sacramento, where the same remains of record, and is in full force and effect, and unsatisfied in whole or in part, of which mortgage defendant Berkey at the time he made such list had actual knowledge; that said mortgage is not lawfully subject to assessment for taxation. It is further averred that the defendant Berkey, in listing the property of plaintiff as above stated, has been guilty of oppression, fraud, and malice, actual and presumed. Besides the actual damages complained of, the plaintiff asks for exemplary damages. A demurrer is interposed to the complaint on the ground that it does not state facts sufficient to constitute a cause of action. A motion is also made to strike out all that part of the complaint which avers the mortgaging of the property as contained in the ninth and tenth allegations.

The demurrer raises the important question whether an action can be maintained against an assessor for maliciously making an excessive assessment upon the plaintiff's property, with intent to injure and oppress him. There is undoubtedly considerable conflict of authority on the proposition. Such an eminent jurist as Judge Cooley maintains that, as the duty of an assessor in listing the value of property for taxation is of a judicial character, that officer is clothed with a complete immunity from private suits, not alone for mere errors of judgment, but for his willful, malicious, and corrupt motive in making an excessive assessment. Cooley, Tax'n, p. 556. To the same effect are Mechem, Pub. Off. p. 424, § 640, and the following cases: Wilson v. Mayor, etc., of New York, 1 Denio, 595; Weaver v. Devendorf, 3 Denio, 117; Gaslight Co. v. Donnelly, 93 N. Y. 557; Steele v. Dunham, 26 Wis. 393. The only recourse, according to this line of authority, lies in a criminal proceeding against the delinquent assessor for his malicious and corrupt conduct. On the other hand, what seems, at the present day, to be the greater and better weight of authority supports the doctrine that while assessors are not liable to private suits for mere errors or mistakes of judgment in making excessive assessments upon property, so long as they had jurisdiction to make the assessment, they will be held liable in damages for making an excessive assessment with a malicious, corrupt, or other sinister motive. The general rule is thus summarized in 19 Am. & Eng. Enc. Law, p. 486:

"It may be laid down as a general rule that a judicial officer acting within his jurisdiction is not liable, in an action for damages, for any judgment he

may deliver. And for the purpose of exemption under this rule an officer who acts judicially for the time being is considered a judicial officer, although he may also perform ministerial duties. In order to be entitled to this protection, however, the officer must act within his jurisdiction, and in good faith, without fraud or malice; and the burden of proof is on the plaintiff to show that the officer acted maliciously and in bad faith."

The following cases recognize the general rule referred to: Gould v. Hammond, 1 McAll. 235, Fed. Cas. No. 5,638; Gregory v. Brooks, 37 Conn. 365; Porter v. Haight, 45 Cal. 631; Green v. Swift, 47 Cal. 536; McCormick v. Burt, 95 Ill. 263; Elmore v. Overton, 104 Ind. 548, 4 N. E. 197; Gregory v. Small, 39 Ohio St. 346; Burton v. Fulton, 49 Pa. St. 151; Morgan v. Dudley, 18 B. Mon. 693; Chrisman v. Bruce, 1 Duv. 63; Ballerino v. Mason, 83 Cal. 447, 23 Pac. 530; Keenan v. Cook, 12 R. I. 52; Parkinson v. Parker, 48 Iowa, 667; Williams v. Weaver, 75 N. Y. 30; Apgar v. Hayward, 110 N. Y. 225, 18 N. E. 85. See, also, cases cited in the above citation from 19 Am. & Eng. Enc. Law, p. 489. It may be observed, further, that there is another line of cases which makes a distinction between public officials who are judges and justices of the peace (that is, those who act in a distinctively and exclusively judicial capacity) and those other public officials who act merely in a quasi judicial capacity, such as assessors and the like. Pike v. Megoun, 44 Mo. 491; Elmore v. Overton, 104 Ind. 548, 4 N. E. 197; Upshur Co. v. Rich, 135 U. S. 467, 10 Sup. Ct. 651; Cooley, Torts (2d Ed.) p. 480, and cases there cited. In Pike v. Megoun, supra, it was said:

"An action, then, does not lie against judges or magistrates, or persons acting judicially, in a matter within the scope of their jurisdiction, however erroneous their judgment, or corrupt and malicious their motives. But there is a limit to this judicial immunity. The civil remedy depends exclusively upon the nature of the duty which has been violated. When duties which are purely ministerial are cast upon officers whose chief functions are judicial, and the ministerial duty is violated, the officer, although for most purposes a judge, is still civilly responsible for such misconduct. And the same rule obtains where judicial functions are cast upon a ministerial officer. But to render a judge acting in a ministerial capacity, or a ministerial officer acting in a capacity in its nature judicial, liable, it must be shown that his decisions were not merely erroneous, but that he acted from a spirit of willfulness, corruption, and malice; in other words, that his action was knowingly wrongful, and not according to his honest convictions in respect of his duty."

The distinction made appears to me to be a correct and logical one. It certainly tends to remove much of the perplexity that would otherwise attend the subject. The reasons why a judge, justice of the peace, or a juror should be completely exempted from private suits for their judicial acts are much stronger, from the standpoint of public policy, than apply to a public officer discharging quasi judicial functions, such as an assessor. As was well said in Scott v. Stansfield, L. R. 3 Exch. 220:

"This provision of the law is not for the protection or benefit of a malicious or corrupt judge, but for the benefit of the public, whose interest it is that the judges should be at liberty to exercise their functions with independence, and without fear of consequences."

Many of the cases cited by counsel for defendants involved suits where it was attempted to sue judges, justices of the peace, and jurors.

These cases are therefore to be distinguished from the case at bar. The authorities in this state—keeping in mind the distinction heretofore made between judicial officers and those acting in a quasi judicial capacity in connection with their ministerial duties—accord with the rule that where malice is expressly alleged, as in the case at bar, a suit can be maintained against an assessor for an excessive assessment. In Ballerino v. Mason, 83 Cal. 447, 23 Pac. 530, a suit was brought against a county assessor and the sureties upon his official bond, as in the case at bar, alleging that the assessor willfully and against law assessed a tract of land belonging to plaintiff at an unlawful and false valuation, which was largely in excess of a sum alleged to be its highest actual value for agricultural purposes. It was held that the averment of the value of the property, to wit, "highest actual value for agricultural purposes," was insufficient, and, further, that the averment that the assessment was willful and against law, without an averment that he acted maliciously and with intent to wrong or injure the owner of the property, did not negative the presumption that he simply erred in judgment, for which he was not liable to an action. In other words, it was there held that as the complaint did not aver, among other things, that the assessor had been actuated by malice, the demurrer should be sustained. The effect of this decision, so far as it is applicable to the present case, is to hold that, had there been an averment of malice in the complaint, the demurrer would have been overruled, and the suit could have been maintained; assuming, of course, that the complaint was sufficient in other respects. In Porter v. Haight, 45 Cal. 631, it was held that the board of state prison directors, in annulling a contract they had made for the employment of convict labor, acted in a judicial, and not a ministerial, capacity, for which, if they acted without fraud or malice, they did not incur any personal liability. In Green v. Swift, 47 Cal. 536, it was held that a board of commissioners appointed by an act of the legislature, with power to turn or straighten the channel of a river in order to protect a populous portion of the country from threatened inundation, are not liable for damages to others caused by the work, resulting from mere errors of judgment in the commissioners, provided they keep within the scope of their powers, and exercise their judgment honestly, and do not act maliciously, oppressively, or arbitrarily. Mr. Justice Wallace, in rendering the opinion of the court, said:

"They [the commissioners] were to exercise their judgment honestly, and to do the work, of course, with proper care and caution, and not maliciously, oppressively, or arbitrarily, to the injury of the rights of other persons. But, keeping within the scope of these powers, they are not to be held liable for mere errors of judgment, nor for injuries to others resulting from the work itself, if properly performed and with due care. Otherwise, as remarked by Lord Kenyon, every statute of this character 'would give rise to an infinity of actions,'" citing Governor, etc., v. Meredith, 4 Term R. 796.

In Gas Co. v. January, 57 Cal. 614, where it was sought to restrain the defendant from proceeding to enforce the collection of taxes upon the valuation as fixed by the assessor, it was said by the court:

"The duty of making the valuation was cast upon the assessor. The method of arriving at the valuation, the process by which his mind reached the conclusion (in case where, as here, it is not pretended that he acted fraudulently or dishonestly), is matter committed to his determination."

The case of Gould v. Hammond, a decision rendered in this court in 1857, and reported in 1 McAll. 235, Fed. Cas. No. 5,638, is also in point. In that case an action was brought against the defendant to recover damages arising from an alleged illegal sale of goods under his order as collector of the port of San Francisco. It is true that no fraud or other corrupt motive was imputed to the defendant, but Judge McAllister, in stating the general rule as to when suits could be brought against an officer acting judicially, said:

"Being pro hac vice a judicial officer, the defendant is not liable to an action if he falls into an error in a case where the act done is not merely ministerial, but one in relation to which his duty is to exercise his judgment and discretion, although an individual may suffer by his mistake. [Citing Kendall v. Stokes, 3 How. 87.] If a discretion was reposed in him by law, the defendant is not punishable, unless it be first proved either that he exercised the power confided in cases not within his jurisdiction, or in a manner not confided to him, as with malice, cruelty, or willful oppression."

The learned judge refers to the case of Otis v. Watkins, 9 Cranch, 339, in support of his reasoning. In that case the question arose whether a collector of port was justified, under the embargo law of April 25, 1808 (2 Stat. 499, § 11), in detaining a vessel if he in fact entertained an opinion that the law was about to be violated. It is obvious that the action of the collector in that case was discretionary, and of a quasi judicial nature. The case came up in the supreme court with reference to certain instructions which the court below gave, in its charge, to the jury. Mr. Justice Livingston, in delivering the opinion of the court, said:

"The charge is deemed incorrect in another respect. The jury was told that it was the collector's duty to have used reasonable care in ascertaining the facts on which to form an opinion. This instruction implies that the collector is liable if he form an incorrect opinion, or if, in the opinion of the jury, it shall have been made unadvisedly, or without reasonable care and diligence. But the law exposes his conduct to no such scrutiny. If it did, no public officer would be hardy enough to act under it. If the jury believed that he honestly entertained the opinion under which he acted, although they might think it incorrect and formed hastily or without sufficient grounds, he would be entitled to their protection. Such was the opinion of the court in the case of Crowell v. McFadden, 8 Cranch, 94, decided at the last term. This does not preclude proof on the part of the plaintiffs showing malice or other circumstances which may impeach the integrity of the transaction."

And Mr. Chief Justice Marshall, delivering a separate opinion in the same case, said:

"If it can be proved, either from the gross oppression of the case, or from other proper testimony, that the collector did not in fact entertain the opinion under which he professed to act, some doubt may be entertained of his being justified by law; but if the opinion avowed was real, though mistaken, a detention under that opinion is lawful."

See, also, State v. Central Pac. R. Co., 7 Nev. 99, where it is strongly maintained that an assessor will not be protected for excessive assessments fraudulently made, and that, in a suit by the state to recover

taxes under a fraudulent assessment, this was good matter of defense. The case of Turpen v. Booth, 56 Cal. 65, cited by counsel for defendants, was a case where it was attempted to sue a grand juror for his alleged erroneous and malicious conduct as such. Manifestly, such a judicial officer should be clothed with a complete immunity from private suits. See, in this connection, the leading case of Yates v. Lansing, 5 Johns. 291.

Although the proposition is not entirely free from doubt, still I think the better rule to follow is that an assessor, although acting judicially when listing property for assessment, and not liable for mere errors or mistakes of judgment, is nevertheless liable to be sued for damages resulting from an excessive assessment made maliciously or corruptly. As the complaint in this case alleges specifically that the excessive assessment was made maliciously, with intent to oppress and injure the plaintiff, the demurrer should be overruled, and it is so ordered.

With reference to the motion to strike out the ninth and tenth allegations, relating to the mortgaging of the property alleged to have been excessively assessed, on the ground that such allegations are immaterial, it is sufficient to say that I regard the allegations as material and germane to the allegations of excessive assessment. The motion to strike out is therefore denied.